"Notwithstanding [the described cap on maximum assessed value], property shall be valued at the ratio of average maximum assessed value to average real market **260 value of property located in the area in which the property is located that is within the same property class, if on or after July 1, 1995:
"(A) The property is new property or new improvements to property;
"(B) The property is partitioned or subdivided;
"(C) The property is rezoned and used consistently with the rezoning;
"(D) The property is first taken into account as omitted property;
"(E) The property becomes disqualified from exemption, partial exemption or special assessment; or *384 "(F) A lot line adjustment is made with respect to the property ***."
Measure 50 does not set out a specific mechanism for effecting its limitations on the assessed value of property; nor does it define many of its own terms-including the term "new property or new improvements to property."[6] However, after the measure passed, the legislature enacted implementing legislation that purports to fill some of those gaps.[7] The resulting statutes include one, ORS 308.146, which provides formulas for calculating the maximum three percent increase in MAV and for determining when the assessed value (AV) must equal that MAV. ORS 308.146(1) and (2).[8] The same statute refers the reader to a different **261 set of statutes, with different formulas or "special determinations of value" for properties that fall within six exceptions-the same six exceptions, described in the same terms, that are identified in Measure 50. ORS 308.146(3).[9] One of the referenced statutes, ORS 308.156, sets out the formula that applies to four of the six exceptions (partition, rezoning, omitted property and disqualification from exemption), while another, ORS 308.153, sets out the formula that applies to the "new property or new improvements" exception. That latter statute provides:
"(1) If new property is added to the assessment roll or improvements are made to property as of January 1 of the assessment year, the maximum assessed value of the property shall be the sum of:
"(a) The maximum assessed value determined under ORS 308.146 ; and
"(b) The product of the value of the new property or new improvements determined under subsection (2)(a) of this section multiplied by the ratio, not greater than 1.00, of the average maximum assessed value over the average real market value for the assessment year.
"(2)(a) The value of new property or new improvements shall equal the real market value of the new property or new improvements reduced (but not below zero) by the real market value of retirements from the property tax account."
**262 "New property or new improvements" is defined for purposes of all of the foregoing statutes, at ORS 308.149(5), as
"(a) *** changes in the value of property as the result of:
"(A) New construction, reconstruction, major additions, remodeling, renovation or rehabilitation of property;
*385 "(B) The siting, installation or rehabilitation of manufactured structures or floating homes; or
"(C) The addition of machinery, fixtures, furnishings, equipment or other taxable real or personal property to the property tax account.
"(b) 'New property or new improvements' does not include changes in the value of the property as the result of:
"(A) General ongoing maintenance and repair; or
"(B) Minor construction.
"(c) 'New property or new improvements' includes taxable property that on January 1 of the assessment year is located in a different tax code area than on January 1 of the preceding assessment year."
II. FACTUAL AND PROCEDURAL HISTORY
DISH is a satellite television provider-it delivers television programming to its customers through satellite signals that are picked up and decoded by equipment that is contained in a box that sits on or near each customer's television set. DISH's physical property in Oregon is limited to the "set-top boxes" that it leases to its Oregon customers and some additional machinery, equipment and furnishings, worth about $23.5 million in total. Most of the property that DISH owns or uses is situated outside of Oregon.
From the time it began operating in Oregon in the mid-1990s until 2009, DISH's property in Oregon was assessed locally, by the counties in which its tangible property was located. However, by the end of that period, the Department of Revenue had concluded that DISH was using its property in Oregon in a "communication" business within **263 the meaning of ORS 308.515,[10] and that, therefore, its property in Oregon must be assessed by the department under ORS 308.505 to 308.665, i.e. , through central assessment. The department notified DISH of its intention to add DISH's property to the central assessment rolls as a "new" unit of property beginning with the 2009-10 tax year. In that first year of central assessment, the department calculated the real market value (RMV) of DISH's property both inside and outside of Oregon as a single unit[11] and then determined that Oregon's proportionate share of that unit was $34.9 million. Then, in order to effect the limitations on the assessed value imposed by Measure 50, it applied the formula set out in ORS 308.153, which is applicable when "new property" is added to the assessment rolls. It entered the resulting AV-$34.9 million dollars-on the central assessment roll.[12] That assessed value of $34.9 million provided the baseline from which, in subsequent years, the department calculated and applied the allowable three percent increase, as provided in ORS 308.146 (1) and (2).
DISH objected to being centrally assessed and to the corresponding increase in the assessed value of its property and filed complaints in the Tax Court in 2009-10 and in **264 each subsequent tax year.[13] It argued that *386 it was not subject to central assessment as a "communication" business, and that, in any event, the department's valuation of its property had violated the limitations on assessed value imposed by Measure 50. While those cases were pending in the Tax Court, this court decided DIRECTV , holding that, because satellite television providers are "in the business of transmitting electronically coded data between computer-like devices," they are "communication" businesses and subject to central assessment under ORS 308.515(1). 360 Or. at 24, 377 P.3d 568. DISH then conceded, in the Tax Court, that DIRECTV controlled, and that it was subject to central assessment as a communication business. However, it moved for summary judgment on its Measure 50 argument.
With regard to that argument, DISH noted that, in the 2008-09 tax year, the total statewide assessed value of its Oregon property, as determined by adding up the assessments of the relevant local assessors, was some $17.4 million. DISH then pointed out that its assessment for essentially the same property in the 2009-10 tax year was nearly double that amount-$34.9 million-and clearly exceeded the three-percent-increase from the previous year's assessed value that was permitted under Measure 50. The department responded that, when it added DISH's property to the central assessment roll for the first time in 2009, it created a new unit of property, which required the calculation of a new MAV under the rule for determining the MAV for new property or improvements set out in ORS 308.153. After 2009, the department added, it had properly used that new MAV when calculating the allowable increase in assessed value under Measure 50. DISH replied, however, that the department's decision to value its property as a unit in 2009 did not create "new property" and did not otherwise make the new property exception applicable.
The Tax Court granted DISH's motion for summary judgment and entered a limited judgment in DISH's favor on **265 the Measure 50 claim (other issues remained, which the Tax Court stayed pending resolution of the department's anticipated appeal of the limited judgment). The Tax Court briefly explained that the claim was controlled by its then-recent decision in Comcast v. Dept. of Rev. , 22 OTR 233, 2016 WL 4961875 (2016), which it summarized as holding that "the department could not apply the new property exception to property previously subject to, but not subjected to, central assessment." For a fuller explanation of the Tax Court's decision, we turn to that case, the facts, arguments and issues of which are identical to those in the present case in all pertinent respects.[14]
III. COMCAST
The ultimate question before the Tax Court in Comcast was-as it is here-whether the department's decision to centrally assess a business's property that previously had been assessed locally implicates the exceptional treatment in Measure 50 for "new property or new improvements." In answering that question, the Tax Court began with the proposition that, to the extent that the definition of "new property or new improvements" in Measure 50's implementing statutes does not conflict with Measure 50, it controlled the outcome of the case. 22 OTR at 243. However, after quoting part of that statutory definition, which appears at ORS 308.149(5), the Tax Court immediately turned to an entirely different proposition-that, as used in another implementing statute, ORS 308.146(3), "new property or new improvements" are those that "come into existence" between January 1 of the preceding assessment year and January 1 of the current assessment year.[15] Id. at 244-45. The Tax *387 Court drew that proposition from one of its own cases, Douglas County v. Crawford , 21 OTR 6, 2012 WL 3204674 (2012), which we discuss at some length below.
The Tax Court in Comcast thus at least initially interpreted the term "new property or new improvements"
**266 without reference to the statutory definition of the term at ORS 308.149(5), on which the department had relied in asserting that it could count the taxpayer's centrally assessed property as new. However, later in the opinion, it addressed the department's contention that, insofar as the taxpayer's property was added for the first time to the central assessment roll, it was "new" within the meaning of one prong of the statutory definition, subparagraph (5)(a)(C) ("The addition of machinery, fixture, furnishings, equipment or other taxable real or personal property to the property tax account."). The Tax Court suggested, first, that that subparagraph of the statutory definition was not relevant because the taxpayer's property already had appeared on various county assessment rolls. It insisted that the "addition" of the taxpayer's property to the central roll could not negate or erase the property's prior appearance on those county assessment rolls; neither could it negate the property's previously-determined MAV that had appeared on those rolls. Id. at 251-52. Second, after acknowledging that the use of the passive voice in subparagraph (5)(a)(C) left some ambiguity with respect to whether it could be read to refer to a change in value of property resulting from the assessor's addition of taxable property to the property tax account, the Tax Court concluded that it was clear from context that the sentence refers only to additions made by the taxpayer itself . Id. at 252-54.
The Tax Court in Comcast also rejected the department's contention that unit valuation of the taxpayer's property effectively placed a new unit of property, which had never been assessed before, on the assessment rolls. The Tax Court explained that unit valuation is just a rule for valuing property that already exists and does not create new property. It was unmoved by the taxpayer's observation that "property" is defined, for purposes of determining whether an assessment has violated Measure 50, as "the total statewide value of all property assessed to a company [that is subject to central assessment]." ORS 308.142(1)(b). In that regard, the Tax Court noted that the use of "value" in that definition was a by-product of the definition's particular function in the statutory scheme. It further noted that, under a more immediately relevant definition of "property"-"all property **267 assessed to each company that is subject to assessment [under the central assessment statutes]," ORS 308.510(6) -the focus is clearly on property, rather than on value. Id. at 254-56.
Finally, the Tax Court dismissed the department's argument that the taxpayer would obtain a windfall-permanent freedom from taxation for its previously unassessed intangible property-if the department is precluded from treating a transition from local assessment to central assessment and unit valuation as within the exception for the addition of new property. The Tax Court explained that that outcome may be simply a necessary result of the operation of Measure 50 and its limitations on increases in assessed value. It also suggested that another exception to the ordinary mode of calculating MAV might apply-seemingly referring to the exception for property "first taken into account as omitted property," ORS 308.146(3)(d) (although, as a practical matter, that exception was no longer available to the department as a means for taking into account the value not captured by local assessments).
As noted, the Tax Court's brief opinion in the present case says little more than that the case is controlled by its earlier opinion in Comcast . Accordingly, when the department appealed from the Tax Court's ruling in the present case that the addition of DISH's property to the central assessment rolls did not qualify it as "new property" within the noted exception, it directed its arguments against the Tax Court's opinion in Comcast .[16]
*388 IV. THE PARTIES' ARGUMENTS
The department contends that the Tax Court's interpretation of the "new property" exception in Measure 50 and its implementing statutes cannot be justified under the interpretive methodology that must be applied. It contends that, as used in the constitutional provision, the term "new property" could encompass a range of meanings, based **268 on ordinary understandings of the word "new." It further contends that, as used and defined in the implementing statutes, the term is not limited to property that has "come into existence" during a specified period, but instead encompasses property that is newly added to an account on the assessment rolls. The department concludes that, under that standard, all of DISH's Oregon property was "new property or new improvements" in 2009, because it was newly added to the central assessment rolls in that year. At the very least, the department adds, any property of DISH's that had not previously appeared on any assessment roll (i.e. , intangible personal property and property that DISH used in its communication business, but did not own) would constitute "new property" when added to the central assessment roll.
DISH responds that the Tax Court correctly surmised that "new property" in this context must refer to property that is newly created or acquired by the taxpayer, and that the term's applicability cannot depend on an assessor's "unilateral" action of adding the property to a different assessment roll.
V. ANALYSIS
The primary question before this court, then, is whether a taxpayer's property that is moved from local to central assessment falls into the exception for "new property or new improvements to property" set out in Measure 50 and its implementing statutes. Put differently, does the term "new property or new improvements" in those contexts refer only to property that was created or acquired by a taxpayer in the year before the current assessment year, or can it refer to property that is new to an assessment roll (or to a property tax account on an assessment roll), based on a decision by the taxing authority? Although the parties treat the constitutional and statutory provisions as interchangeable, freely mixing arguments about the statutory context with arguments about the history of the constitutional provision's adoption, we think that a more orderly approach is required. Accordingly, and consistent with our usual practice of addressing subconstitutional arguments before constitutional arguments, Haynes v. Board of Parole , 362 Or. 15, 22, 403 P.3d 394 (2017), we first construe the "new property"
**269 exception as it appears in the statutes, and then consider whether that construction conflicts with any aspect of the constitutional provision.
A. The Implementing Statutes
As noted above, the implementing statutes include a provision, ORS 308.146(3), that exactly mirrors Measure 50's list of exceptions to the general formulas for calculating and increasing a property's AV and MAV. They also include a definition of the exception that is at issue here-"new property or new improvements to property." The parties appear to agree that, unless that statutory definition, as construed, conflicts with Measure 50, it controls the outcome of this case. For the reader's convenience we set out that definition a second time.
"(a) 'New property or new improvements' means changes in the value of property as the result of:
"(A) New construction, reconstruction, major additions, remodeling, renovation or rehabilitation of property;
"(B) The siting, installation or rehabilitation of manufactured structures or floating homes; or
"(C) The addition of machinery, fixtures, furnishings, equipment or other taxable real or personal property to the property tax account.
*389 "(b) 'New property or new improvements' does not include changes in the value of the property as the result of:
"(A) General ongoing maintenance and repair; or
"(B) Minor construction.
"(c) 'New property or new improvements' includes taxable property that on January 1 of the assessment year is located in a different tax code area than on January 1 of the preceding assessment year."
ORS 308.149(5).
Utilizing that definition, the department argues that, to the extent that there was a change in the value of DISH's taxable real and personal property due to the department's addition of the property to the central assessment rolls in 2009, the change in value constituted "new **270 property or new improvements" within the meaning of ORS 308.149(5)(a)(C). The department acknowledges that that subparagraph speaks of additions to the "property tax account," and that the term "property tax account" is generally used to refer to a subdivision of a local assessment roll.[17] It argues, however, that, as used in subparagraph (5)(a)(C), the term also must pertain to the central assessment roll.
We agree with the department that, in the context of ORS 308.149(5)(a)(C), "property tax account" must refer not only to the administrative division used for listing property in the local assessment rolls, but to the equivalent administrative subdivision used in central assessment-"the company or utility that is subject to [central assessment]."[18] If it were otherwise, centrally-assessed businesses would enjoy a tax loophole not enjoyed by other taxpayers: They could add machinery, equipment, and other real and personal property to their businesses without ever being taxed for those additions. There is nothing in Measure 50 or its implementing statutes that suggests an intent to grant such favorable tax treatment to centrally-assessed businesses when compared to other businesses and individuals. In fact, given that the implementing statutes begin with a definition that separately identifies the property of centrally-assessed businesses as "property" for purposes of determining whether an assessment violates Measure 50, ORS 308.142(1)(b), we can infer an intent to make centrally-assessed businesses equally subject to the entire tax limitation scheme, including the **271 so-called "exceptions."[19] Accordingly, we conclude that, when ORS 308.149(5)(a)(C) provides that the addition of property "to the property tax account" constitutes "new property or new improvements to property," it includes additions to the accounts of businesses on the central assessment roll.
Of course, our conclusion in that regard does not resolve the real question here-whether, in ORS 308.149 (5)(a)(C), "the addition of *** real or personal property to the property tax account" refers to something *390 more or different than the assessor's administrative act of adding property to the assessment rolls. The department argues that it does not-that it is the assessor's act of adding property to the tax account that makes it "new property or new improvements to property." DISH, on the other hand, subscribes to the Tax Court's view that property must be intrinsically new (that is, created or acquired by the taxpayer in the preceding assessment year) and added to the taxpayer's property tax account as a result of that creation or acquisition to qualify under ORS 308.149(5)(a)(C).
Purely as a textual matter, the department appears to have the better argument. The subsection identifies a specific action-"the addition of *** property to the property tax account "-that is performed by an assessor.[20] There is no mention of creation or acquisition of the property by the taxpayer (or, for that matter, any action by the taxpayer at all). It seems reasonable to assume, in those circumstances, that the drafters of ORS 308.149(5)(a)(C) intended the assessor's **272 action of adding the property to the assessment roll to be an event that qualifies property as "new."
DISH argues, however, that context makes it clear that ORS 308.149(5)(a)(C) refers only to additions by the assessor that result from an action of the taxpayer. It points to the definitions of "new property or new improvements" that surround ORS 308.149(5)(a)(C) - ORS 308.149 (5)(a)(A) ("new construction, reconstruction, major additions, remodeling, renovation or rehabilitation of property"); ORS 308.149(5)(a)(B) ("siting, installation or rehabilitation of manufactured structures or floating homes); ORS 308.149(5)(b)(A) and (B) ("[g]eneral ongoing maintenance and repair" and "minor construction" are not "new property or new improvements")-noting that they all refer to actions taken by the taxpayer. Invoking the principle that the meaning of statutory terms may be indicated or controlled by the terms by which they are surrounded, see State v. McCullough , 347 Or. 350, 360-61, 220 P.3d 1182 (2009) (describing and applying that principle), DISH concludes that ORS 308.149(5)(a)(C) also must refer to or require an action by the taxpayer that results in the addition of property to the assessment rolls.[21]
But, even assuming that the principle being invoked could be properly employed in this circumstance, the paragraphs and subparagraphs of ORS 308.149(5) that surround subparagraph (5)(a)(C) are not all as DISH describes them. DISH fails to consider paragraph (5)(c), which provides " 'New property or new improvements' includes taxable property that on January 1 of the assessment year is located in a different tax code area than on January 1 of the preceding assessment year." Relocation of taxable property into a **273 different tax code is decidedly not an act of acquisition or creation of property by the taxpayer; it is an action that is performed by the county assessor.[22] In view of *391 the inclusion of paragraph (5)(c) in the meaning of the term, DISH's theory that action by the taxpayer is a necessary ingredient does not hold water.
Neither can paragraph (5)(c) be written off as an inexplicable and therefore inconsequential fluke, as DISH suggested to this court in oral argument. In that regard, it is worth looking at the historical treatment of tax code area relocation in the effort to constitutionally limit increases in property assessments and taxation. As explained above, Measure 50 was drafted and referred to the people by the 1997 legislature as a replacement for Measure 47 (1996), an earlier property tax limitation provision that had proved to be problematic. Like Measure 50, Measure 47 sought to reduce increases in property taxes, but it did so by placing an annual limit on increases in ad valorem property taxes, rather than on increases in assessments. And like Measure 50, Measure 47 set out exceptions to the general formula for limiting annual increases, including for "improvements" to property (defined to include new construction, major additions, renovation and remodeling of real property, and siting and rehabilitation of manufactured structures), increases in assessed value resulting from rezoning, subdivision of parcels, lot line adjustments, disqualification from exemption, and addition of omitted property to the assessment and taxation rolls. But Measure 47 also separately excepted property that is "placed in a different taxing code area"-an exception that was not carried over when the legislature drafted **274 Measure 50 for referral to the people. Instead, it seems, the legislature included the changed taxing code area exception in the implementing statutes, but as part of the definition of "new property or new improvements" at ORS 308.149(5). Under those circumstances, we assume that the legislature made a considered decision to categorize a change in value resulting from placement in a different taxing code area as "new property or new improvements," most likely because it seemed to have some affinity to the intended meaning of that term. If we credit that considered decision and recognize paragraph (5)(c) as a nontrivial part of the definition of "new property or new improvements," then DISH's argument must fail.
That is not to say that paragraph (5)(c) perfectly fits into the department's suggested meaning of the term "new property or new improvements" either. But it undoubtedly is a closer match. We note, in that regard, that relocating property into a different tax code area is an action that is performed by the county assessor. The assessor takes that action based on decisions made by other legal entities, i.e. , taxing districts, that are not within his or her control. In that sense, the assessor's action is not unlike the department's action of adding property that is used in a communications business to the central assessment roll-or any assessor's action of adding property to an assessment roll when he or she is under a legal duty to do so. In the end, the fact that the relocation of property into a different tax code area is included in the definition of "new property or new improvements" is at odds with DISH's narrow interpretation of the term, and it lends some support to the department's view the assessor's act of adding property to the assessment roll is key-at least when the assessor is acting under a legal duty.
Three arguments remain.[23] One concerns Douglas County v. Crawford , 21 OTR 6, 2012 WL 3204674 (2012), on which the Tax Court relied in its Comcast opinion to hold that "new property or **275 new improvements" is property that "came into existence" between January 1 of the preceding assessment year and January 1 of the current assessment year. Although the Tax Court's Crawford opinion is not relevant context for purposes *392 of this court's interpretive endeavor, we consider its underlying analysis to determine whether it is persuasive.
In Crawford , a county assessor discovered that a taxpayer had added improvements to his property at some undetermined time, but clearly before January 1 of the prior assessment year. The assessor added the improvements to the current assessment roll as "new property" under ORS 308.146(3)(a). In the taxpayer's challenge to the resulting increase in his tax bill, the Tax Court opined that, because the improvements at issue indisputably had "come into existence" before January 1 of the prior assessment year, they could not be classified as "new property." 21 OTR at 11. It insisted that "new property or new improvements" could only mean property that had "come into existence" during the prior assessment year (which starts and ends on January 1). Id.
The Tax Court based its definition of "new property or new improvements" on the term as used in ORS 308.146(3)(a), considered in the context of the surrounding statutes.[24] Id. at 9-11. It began by drawing on Webster's Third New Int'l Dictionary 1522 (unabridged ed. 2002), for a definition of "new": "[H]aving existed or having been made but a short time; having originated or occurred lately." Based solely on that definition, it announced that something (including property) is "new" if it "has existed for only a short time" and is not "new" if it "existed earlier than a measuring point in time." Id. at 10. The Tax Court then inferred, from the context surrounding ORS 308.146(3)(a), that the relevant "measuring point" is the assessment year preceding the current assessment year. It drew that inference from: (1) the fact that "minor construction"-which, under ORS 308.149(5)(b)(B), is excluded from the meaning of "new property or new improvement"-is defined in terms of the real market value of improvements "in any assessment year" and **276 the cumulative real market value of improvements "over five assessment years," ORS 308.149(6) ; (2) the fact that ORS 308.149(5)(c) provides that "new property and new improvements" includes "taxable property that on January 1 of the assessment year is located in a different tax code area than on January 1 of the preceding assessment year," added to the fact that there is "no indication" in the statutes that the same time limitations would not apply to improvements to property; and (3) ORS 308.153 provides a formula for determining the maximum assessed property "if new property is added to the assessment roll or improvements are made to property as of January 1 of the assessment year ." Id. at 10-11.
The department argued, and we now agree, that the definition of "new property or new improvements" that the Tax Court announced in Crawford does not hold up under scrutiny. To begin, the Crawford decision relies on a single definition to support the view that, in this context, "new" means having newly come into existence, and cannot mean newly discovered or newly assessed. But "new" has more than one potentially relevant meaning, as can be seen from the first three definitions of the word in Webster's at 1522:
1 : having existed or having been made but a short time : having originated or occurred lately : not early or long in being : RECENT, FRESH, MODERN - opposed to old *** 2 a : having been seen or known but a short time although perhaps existing before : recently manifested, recognized, or experienced : NOVEL ***; broadly : STRANGE, UNFAMILIAR *** b : being other than the former or old : having freshly come into a relation (as use, connection, or function) *** cof land : undergoing or about to undergo cultivation for the first time *** d : being the first or earliest available of the current season's crop *** 3 : having been in a relationship, position, or condition but a short time and usu. lacking full adaptation thereto ***."
The Tax Court in Crawford focused on the first definition, concluding that "new property" therefore must be property that has existed for only a short time, at least for the taxpayer who has acquired or created it. But, as the department argues and the second two definitions make clear, "new" is often a relational adjective, denoting a recent *393 **277 relationship with some other thing. Although, before this court, DISH acknowledges the point, it still insists that "new property" necessarily means property that has been newly acquired or constructed by the taxpayer , because when ordinary people speak of having "new" property, such as a "new house," it is understood that they are talking about having just purchased or constructed a house. But, given that ORS 308.146(3)(a) refers to property that "is new property or new improvements to property," and not to any person or entity "having" new property, DISH's explanation of ordinary usage is unhelpful. In the end, assuming that the term "new" is used in the relational sense, there is nothing in the phrase "new property or new improvements to property" that identifies what the property is new in relation to. It could be, as DISH argues now and the Tax Court insisted in Crawford , that the phrase refers specifically to property that is newly created or acquired by the taxpayer. But it could just as easily refer to property that is new to a property tax account on an assessment roll.
A second problem with the Tax Court's Crawford decision is that it posits the existence of some "measuring point in time" before which a given item cannot be "new," based on the court's preferred definition of the term ("having existed or having been made but a short time"). However, neither the Tax Court's chosen definition nor any other ordinary understanding of the term of which we are aware states or implies that the quality of being "new" necessarily involves a defined time frame.
Finally, the specific statutory phrases that the Tax Court identified in Crawford as the basis for its chosen time frame (the year preceding the current assessment year) simply cannot support the weight of the inference that the Tax Court seeks to draw from them. While those phrases may speak to the issue of timing within the specific contexts in which they appear, they do not provide a solid basis for the Tax Court's generalization that, to qualify as "new," property must have "come into existence" during, and only during, the prior assessment year. Ultimately, the Tax Court's reasoning in Crawford is unpersuasive. We can set it aside, along with the textual and contextual analysis on which it rests, as unhelpful to our analysis.
**278 We turn, then, to the second contextual argument offered by DISH and the Tax Court-that "new property or new improvements" must be construed in the light of a different exception enumerated in Measure 50 and its implementing statutes, for property that "is first taken into account as omitted property." Or. Const., Art. XI, § 11 (1)(c)(D); ORS 308.146(3)(d). The argument, in essence, is that the two exceptions must be mutually exclusive, and that reading "new property or new improvements" to include the assessor's addition of property to the rolls that could have been but was not assessed in prior tax years contradicts that mutual exclusivity. A corollary argument is that construing the two exceptions as overlapping to some degree, so that either exception may apply when the assessor adds previously assessable but unassessed property to a property tax account, "neutralizes" important limitations that the legislature has placed on an assessor's ability to invoke the "omitted property" exception, as well as an implied requirement that the changed property ratio formula be applied to the earliest year within five years from which the property was omitted.[25]
We begin our analysis by acknowledging the validity of the principle underlying those arguments-that, if possible, we should avoid interpreting statutory enactments in a way that makes parts of them superfluous or redundant. Arken v. City of Portland , 351 Or. 113, 156, 263 P.3d 975 (2011). Accordingly, in both the constitutional *394 and statutory context, we must try to interpret the "new property" exception as having a different meaning and serving a different function than the exception for "omitted property."
There is no definition of the term "omitted property" that is specifically applicable to Measure 50 or ORS 308.146(3), but it is reasonable to assume that the "omitted **279 property" statutes that were in place when those provisions were enacted informed the understanding of the voters and legislators who enacted them. Those statutes include ORS 311.207(1) (1995), which provided:
"Whenever the assessor discovers or receives credible information, or if the assessor has reason to believe that any real or personal property, including property subject to assessment by the Department of Revenue or any buildings, structures, improvements or timber on land previously assessed without the same, has from any cause been omitted, in whole or in part, from the assessment and taxation on the current assessment and tax rolls or on any such rolls for any year or years not exceeding five years prior to the last certified roll, the assessor shall give notice as provided in ORS 311.209."
(Emphasis added.)[26] Another statute, ORS 311.211(1) (1995),[27] provided that if a person who receives the notice prescribed in ORS 311.207 (1995)"fails to show any good and sufficient cause why the assessment shall not be made, the assessor shall proceed to correct the assessment or tax roll or rolls from which the property was omitted," by adding the property thereto. (Emphasis added.)[28] Based on those statutes, we infer that, as used in Measure 50 and ORS 308.146(3)(d), "omitted property" is property that was assessable to a taxpayer's account in the year or years preceding the current assessment year, but for whatever reason was not actually assessed to the taxpayer/account in those years. The exception for "property [that is] first taken into account as omitted property" thus refers to the assessor's act of taking the previously assessable but unassessed property into account by adding it to the earliest assessment roll (within five years of the "last certified roll") from which it was omitted. DISH asserts, and we agree, that the exception functions to "allow[ ] assessors to revisit past rolls to correct the omission of property that was subject to assessment but not **280 actually assessed in those earlier tax years"[29] -although we would add that it also provides a special formula for limiting the property's assessed value and maximum assessed value when the assessor undertakes such a revisitation.
We are asked to determine whether interpreting the "new property" exception to include the addition of property (even previously assessable but unassessed property) to an account on an assessment roll renders the "omitted property" exception redundant or superfluous. At least on a rudimentary level, we see no redundancy: One exception would pertain when the assessor adds the adjusted value of a previously unassessed property to prior assessment rolls from which the property was omitted, while the other (as construed) would pertain when the assessor adds the adjusted value of previously unassessed property to the current assessment roll. While it is true that either exception *395 might pertain in some circumstances (i.e. , when property was subject to assessment, but not actually assessed, on previous assessment rolls), there is nothing inherently redundant or pointless in their existing side by side: They could provide assessors with a choice in those circumstances as to when to take the previously unassessed property into account.
But, adhering to the Tax Court's disposition of the issue in Comcast , DISH argues that the statutes do not leave room for such a choice. In Comcast , the Tax Court observed that ORS 308.156(3), which governs determination of the maximum assessed value of "omitted property" for purposes of Measure 50's limitations, is necessarily linked to the general "omitted property" statutes in ORS chapter 311. Comcast , 22 OTR at 245. It then observed that those general "omitted property" statutes require assessors who learn that a property has been omitted from the assessment **281 rolls for any of the five preceding years to correct the assessment rolls for the relevant years. Id. See ORS 311.216(1) ("Whenever the assessor discovers *** that any real or personal property *** has from any cause been omitted in whole or in part from assessment and taxation on the current assessment and tax rolls or on any such rolls for any year or years not exceeding five years prior to the last certified roll, the assessor shall give notice [of the assessor's intention to add the property to the roll]."); ORS 311.223(1) (if the party notified fails to show sufficient cause why assessment should not be made, "the assessor shall proceed to correct the assessment or tax roll or rolls from which the property was omitted"). The Tax Court inferred that ORS 308.156(3) incorporates that requirement and that, therefore, when it states a formula for determining MAV "for the first tax year for which property is added to the property tax account as omitted property," ORS 308.156(3)(a), it is requiring the assessor to apply the formula to the earliest year, within the five previous years, that the property was assessable but not assessed. 22 OTR at 245. In light of that inference, the Tax Court concluded, the legislature could not have intended that assessors be permitted to instead add such property to the current assessment roll as "new property" and apply the exceptional value calculus provided in ORS 308.153. Doing so would neutralize the implied requirement that assessors base the exceptional value calculation on the earliest assessment year (within five years) from which the property was omitted. Id.
That analysis is superficially appealing but unsatisfying when further explored. It fails to consider the apparent purpose underlying the statutory requirement that omissions from assessment rolls be corrected and how that purpose fits into the broader issue that is before us. In Comcast , the Tax Court seemed to assume that the requirements that assessors give notice of an intent to correct omissions from "the current assessment and tax rolls or on any such rolls for any year or years not exceeding five years prior to the last certified roll," ORS 311.216(1), and that they correct omissions unless good cause is shown, were intended to have a broad substantive effect-to preclude assessors from using any other procedure for taking property that appears to **282 have been omitted into account. In other words, it assumes a legislative intent that, if an assessor learns of property that was assessable but unassessed in prior assessment rolls and fails to add the property to those prior assessment rolls using the procedure set out in ORS 311.216 to 311.232, he or she loses the ability to assess that property in any fashion .
ORS 311.223 itself suggests, however, that the legislature did not have that intent. While ORS 311.223(1) specifies that property "shall" be added as omitted property if an objecting taxpayer "fails to show any good and sufficient cause why the assessment [of omitted property proposed by the assessor] shall not be made," it does not provide a clear path forward when the taxpayer succeeds in showing that there is good and sufficient cause why the property should not be assessed retrospectively . The statute does not specify what constitutes "good and sufficient cause," and an assessor seemingly could determine that good and sufficient cause exists because he or she is unable to determine when property that indisputably is assessable now should first have been included in prior assessment rolls-or because, as *396 here, the applicability of a certain assessment rule has been in dispute. Nothing in ORS 311.223 or the surrounding "omitted property" statutes precludes the assessor from adding the property to the current assessment roll, rather than to a prior assessment roll, in those circumstances.
And doing so would be consistent with what we think is the primary purpose behind setting out the omitted property procedures as a requirement-to ensure that property that has been mistakenly or even purposefully omitted from the assessment rolls does not escape taxation. Our thinking, in that regard, is supported by ORS 311.232, which provides a mechanism for compelling an assessor who fails to act on credible information that some property has been omitted from taxation to comply with the omitted property procedures."[30] The scenario that ORS 311.232 brings **283 to mind is an assessor's ongoing refusal to add assessable property to the assessment and taxation rolls-not his or her addition of property to the assessment rolls without first going through the statutory notice procedure, and not his or her refusal to add property to the assessment roll for one to five discrete years in the past.
If the legislature's main concern, in requiring assessors to add property that has been omitted from assessment and taxation "on the current assessment and tax rolls or on any such rolls for any year or years not exceeding five years prior to the last certified roll," ORS 311.216(1), was to ensure that such property does not escape taxation, then we should be concerned about neutralizing that desired outcome. Yet interpreting "new property" in the narrow fashion that the Tax Court proposed in Comcast , that is, as necessarily excluding property that might have been added to an earlier assessment roll would have that effect-at least when, as here, the assessor has chosen not to attempt retroactive assessment to a prior tax roll. Thus, far from supporting the Tax Court's view that, as used in ORS chapter 308, "new property" and "property first taken into account as omitted property" are necessarily mutually exclusive, we think that the mandatory language ORS 311.216 to 311.232 ultimately supports the department's view that the two categories have overlapping applications. Recognizing that potential for overlap does not cause the requirements in the omitted property statutes to be pointless or ineffective.[31] The department's interpretation of the "new property" exception **284 can easily coexist with the omitted property exception and the statutes on which it appears to rely.
The parties' third and final contextual argument focuses on another of Measure 50's implementing statutes, ORS 308.162(1), which provides:
"(1) If two or more property tax accounts are merged into a single account, or if property that is attributable to one account is changed to another account, the maximum assessed value of the property may be adjusted to reflect the merger or change, but the total maximum assessed value for all affected accounts may not *397 exceed the total maximum assessed value the accounts would have had under ORS 308.146 or ORS 308.149 to 308.166if the merger or change had not occurred ."
DISH contends that that statute undermines the department's understanding of the "new property or new improvements" exception as pertaining when the assessor adds property to a property tax account. Under the statute, DISH explains, the mere fact that the assessor moves property from one property tax account to another does not and cannot have the effect that designation as "new" property requires-a reset of the property's maximum assessed value in accordance with the formula set out at ORS 308.153.
Although DISH sees ORS 308.162(1) as undercutting the idea that a property qualifies as "new' could depend on the unilateral action of an assessor (as opposed to a taxpayer), we think that position misses the point: Insofar as ORS 308.162(1) does not identify an actor who "changes" property from one account to another, the limitation the statute imposes presumably would apply even if the change that occurred had been instigated by the taxpayer-as would occur, for example, if a taxpayer purchased or otherwise acquired property that previously had appeared in a different property tax account. That property would be new in the sense that the taxpayer had not previously owned it, but it would be valued as if the change in ownership and transfer to a new account had not occurred. ORS 308.162(1) does not define "new property"; instead, it precludes revaluation of property that previously has been assessed under a different property tax account. That aspect of the statute is in no **285 way inconsistent with the meaning of "new property or new improvements" for which the department contends. Still, even if property is "new" within that meaning, i.e. , property added to a tax account by an assessor, it can only be revalued as provided in ORS 308.153 if it has not previously been assessed under a different property tax account.[32]
Having considered all of the parties' arguments, we conclude that, for purposes of ORS chapter 308, "new property or new improvements" is not limited to property that has been created or acquired by the taxpayer within some designated time period, but includes all property that is lawfully added by the assessor to a taxpayer's property tax account on an assessment roll. Property that has not previously been assessed under a different account is "new property," but it must be valued as though the change in accounts had not occurred. That broader meaning is more consistent with the wording of the statutory definition of the term at ORS 308.149(5), including the somewhat anomalous reference to property relocated to a different tax code area, ORS 308.149(5)(c). And, contrary to DISH's and the Tax Court's assertions, it does not clash with the meaning and intended application of another exception set out in ORS 308.146(3) -for property "first taken into account as omitted property." ORS 308.146(3)(d). Finally, that meaning accounts for ORS 308.162(1), which precludes evaluation of property that is moved from one property tax account to another.
B. Measure 50
We now consider whether the meaning that we have assigned the phrase "new property or new improvements" as it is used in ORS chapter 308 conflicts with the intended meaning of that phrase as it is used in Measure 50. To discern the intent of the voters who adopted Measure 50, we look at the wording itself, the surrounding context, and, if helpful, the history of the measure's adoption. See generally , Shilo Inn v. Multnomah County , 333 Or. 101, 116-17, 36 P.3d 954 (2001) (describing process for construing initiated and referred constitutional provisions). In arguing **286 that the proposed meaning of the phrase conflicts with Measure 50, DISH focuses first on text. It argues that the voters who adopted Measure 50 must have understood that the meaning of the phrase "new property or new improvements" was delimited by a particular, ordinary meaning of the word "new"-"having existed *** but a short time." Webster's at 1522. But that argument fails in the constitutional context for the same reason that it failed in the statutory *398 context: There are other "ordinary" definitions of "new" that are perfectly compatible with the construction that we have proposed. See 364 Or. at 276-77, 434 P.3d at 392-93. And DISH has not pointed to anything in the surrounding constitutional provision that suggests that that construction and those other ordinary meanings could not have been what the voters intended.
DISH contends that the history of Measure 50's adoption shows that the voters did not intend the "new property" exception to have the broader meaning that we (and the department) have assigned to it. Based on statements in the Voters' Pamphlet (which this court may look to in determining the voters' understanding or intentions with respect to such a measure, Shilo Inn , 333 Or. at 110, 36 P.3d 954 ), DISH argues that the voters who adopted Measure 50 understood that the measure would "limit[ ] property taxes through restrictions on assessed value" and would ensure that their property tax payments "w[ould] not grow more that 3% per year." Official Voters' Pamphlet, Special Election, May 20, 1997, 5, 8. DISH contends that interpreting "new property or new improvements" to hinge solely on the assessor's decision to add property to the assessment rolls would deny voters the protection from uncontrolled year-to-year tax increases that Measure 50 promised. Focusing on the facts of its own case-the department's "unilateral" decision to assess DISH centrally and, thus, to add DISH's property to the central assessment rolls-DISH argues that
"if the Department is correct, each year would bring the possibility that a company's maximum assessed values will be thrown out and replaced with whatever the Department determines the real market value to be, all on the whim of the Department's unilateral decision to begin centrally assessing the company."
**287 DISH's characterization of what voters were promised in Measure 50 is overly simplistic. It fails to recognize that the voters were told in the measure itself, the ballot title, and the explanatory statement provided by the legislature (all of which were printed in the Voters' Pamphlet) that there were exceptions to the general limitation on increases (including an exception for "new property or new improvements") that "allow for taxes to be increased by more than the otherwise applicable limitation." Voters' Pamphlet at 5, 7. And DISH fails to show that the exceptions were described to the voters in a way that would foreclose application of the "new property" exception when an assessor lawfully has added property to a taxpayer's account on an assessment roll.[33]
DISH suggests, in a related vein, that the department's broad reading would undermine Measure 50 by "putting taxpayers' constitutional rights in the hands of the very assessors that the voters sought to restrain." That is so, DISH argues, because the department's reading allows an assessor to act unilaterally to except property from the limitation on assessed values that is the essence of Measure 50. Putting aside the question of whether a "new property" designation can reasonably be deemed to "except" property from Measure 50's limitations on assessed values,[34] we are not persuaded by DISH's warning of unilateral additions to the assessment rolls by the department. Assessors, including the department, must act in accordance with the applicable tax laws and taxpayers may challenge their failure to do so. The present circumstances are a case in point. The department was required, by statute, to centrally assess all Oregon property used by communications businesses like DISH. ORS 308.515(1)(h). To do so, the department had to add DISH's property to the central assessment roll, in one fashion or another. While there may be a dispute about the **288 effect of the department's action, DISH had an opportunity to challenge it-as *399 do other taxpayers when an assessor takes a similar action. Accordingly, we are not persuaded by DISH's warning that Measure 50's promise will be undermined by "unilateral" decisions by assessors to except property from the measure's ordinary limitations.
In the end, DISH has not identified anything in the text, context, or history of the adoption of Measure 50 that suggests that our interpretation of the "new property or new improvements" exception in ORS chapter 308 conflicts in any way with what the voters who adopted Measure 50 intended by that term. We conclude that, for purposes of both ORS chapter 308 and Measure 50, the exception for "new property or new improvements" pertains when the assessor lawfully adds real or personal property that has not previously been assessed to a property tax account.
C. Did the addition of DISH's property to the central assessment roll constitute "new property or new improvements?"
We turn, then, to the remaining question-whether the addition of DISH's property to the central assessment roll as a result of the department's decision to centrally assess DISH's property fits into the definition of "new property" that we have announced, in whole or in part. To answer that question, we must determine whether and to what extent the property that the department added to DISH's new account on the central assessment roll had previously been assessed under a different property tax account.[35]
When the department first subjected DISH to central assessment, it created a new account on the central assessment roll and added what it deemed to be the total value of **289 the property situated in Oregon that DISH had used in its communications business to that account. As permitted by ORS 308.555, it used the "unit valuation" method to arrive at that total value-that is, it valued DISH's entire business, both inside and outside Oregon, as a unit, and ascertained the portion of that unit that was subject to taxation in Oregon based on a formula that considered the original cost of DISH's property in Oregon and its Oregon operating revenue. The department acknowledges that the "unit" it employed in valuing DISH's Oregon property included tangible real and personal property that previously had been subjected to local assessment, as well as previously unassessed intangible property.
DISH contends that, at least with respect to the department's addition of real and tangible personal property that previously had been subjected to local assessment to DISH's account in the central assessment roll, there is no legitimate basis for placing that property within the "new property" exception, even under the interpretation that we have announced. DISH then suggests that any previously unassessed intangible properties are such a small part of its overall assets that any attempt to revalue them as "new property" would be pointless and unwarranted.
The department maintains, however, that it is incorrect to suggest that even part of DISH's property that the department added to the central assessment roll had previously been subjected to local assessment. The department explains that the unit of property that is centrally assessed is "categorically different" from any units of property that are locally assessed:
"Taxpayer's tangible property-the only property that was previously assessed locally-consisted mostly of set-top boxes or similar equipment *** and the tools to install and service that equipment. By themselves, these pieces of plastic and metal would not be worth much. But in *400 central assessment, the Department was able to consider the value of that equipment in the context of taxpayer's business as a whole. The set-top boxes are valuable because they allow taxpayer to transmit programs and advertisements to paying customers. The real market value of taxpayer's **290 property in Oregon is the Oregon-allocated share of the business property as a whole, which takes into account the headquarters and all other transmission infrastructure taxpayers have created to deliver communication services here. That property is a new unit of property distinct from any of the individual components that previously were assessed locally."
Thus, the department concludes, when a company's property is first subjected to central assessment and unit valuation, the entire unit of property should be considered "new property": Even if some component parts have been subjected to local assessment, the unit as a whole, which is "categorically different" from its parts, has not.
The department also contends that a company's property should be treated as "new property" when it is centrally assessed for the first time because, at that time, it is being assessed under a different legal standard (i.e. , unit valuation). The department suggests that such treatment would be consistent with the theory underpinning another exception listed in Measure 50 and ORS chapter 308, for property that "becomes disqualified from exemption, partial exemption or special assessment," ( Or. Const., Art. XI, § 11 (1)(c)(E); ORS 308.146(3)(e) )-which, in its view, is that an exception from the ordinary limitations imposed by Measure 50 is warranted whenever property is assessed under a different legal standard than has applied to it in previous years.
To begin, we agree with DISH that the exception for property disqualified from special assessment and generalizations about its underlying objective have no bearing on the question of what qualifies as "new property." Statutory terms should be evaluated in the context in which they appear, but that does not mean that they can be analogized to any and all terms that appear in their general vicinity. We are not persuaded that the nearby exception for property disqualified from special assessment is indicative of a broad legislative concern about the effect of any changes in the legal standard under which property is to be assessed, or that the "new property" exception can reasonably be viewed as embracing such a concern.
**291 On the other hand, we find DISH's response to the department's "unit of property" argument to be reductive and, ultimately, incorrect. DISH insists that unit valuation is merely a different method of valuing the same, tangible property, and cannot, by its application, take a different "unit" of property into account. It explains:
"If [a] railroad is locally assessed, a county assessor would identify and appraise a length of track, rail depot or repair shop situated in the county, and would probably value that property using appraisal methods that consider the property's original cost less depreciation. Under central assessment, the Department of Revenue appraises the same length of track, rail depot, or repair shop, as well as all of the rest of the railroad's property in the state, but it may-and often does-take into account the enhanced value that flows to that property because it is part of an interconnected network of rail lines and stations in Oregon and around the country. *** Whether or not the assessor employs unitary valuation methods, or represents a county or the state, the assessor is appraising *** the same line of railway, rail depot, and repair shop. They are just valuing it differently.
"Thus, the appraisal unit-that is, the property within and without the state that gives the in-state property enhanced value-is not itself directly assessable; the unit is merely a measuring stick for determining the value of assessable property situated in the state. *** The unit is not assessable property; nor does the unit describe what property is taxable."
DISH's explanation treats the taxpaying company's tangible assets in the state as the necessary focus of a unitary valuation process. In its view, the entire purpose of the unitary valuation process is to determine how the value of those tangible assets are enhanced *401 by their connections to other properties. But while that view of unitary valuation clearly has its advocates, it appears to have arisen in a particular context that is not relevant in Oregon. Specifically, in states where taxation of intangible property is prohibited across the board, courts have used the theory that DISH promotes to justify some of the results of unitary valuation, which necessarily involves the assessment of intangibles. **292 See Roehm v. County of Orange, 32 Cal. 2d 280, 285, 196 P.2d 550 (1948) ("Intangible values ... that cannot be separately taxed as property may be reflected in the valuation of taxable property."); Michael Todd Co. v. County of Los Angeles, 57 Cal. 2d 684, 693-94, 371 P.2d 340, 21 Cal.Rptr. 604 (1962) (same); Bruce A. Fowler, Unit Valuation: Oklahoma's Illegal Tax on Intangible Property , 31 Tulsa L. J. 367, 381-82 (1995) (describing approach of California courts to apparent conflict between unitary valuation and state law barring taxation of intangible property: Intangible property "may be subject to tax to the extent that the property enhances the value of tangible, taxable property which is subject to unit valuation").
Here in Oregon, where there is no bar on taxing the intangible property of the centrally-assessed companies whose property may be subjected to unitary valuation, ORS 307.030(2), there is no reason to adhere to that artificial focus on tangible property. We can acknowledge that unit valuation as permitted by ORS 308.555 is not at bottom just a different way of valuing a company's tangible property. Unit valuation actually values the company as a going concern: It considers a company's market value as a whole and does not, either in practice or in theory, purport to assess the various component parts that go into that whole. See generally Gary C. Cornia, David J. Crapo, and Lawrence C. Walters, The Unit Approach to the Taxation of Railroad and Public Utility Property , Lincoln Inst. of Land Pol. Conference Paper 130-33 (May 2013), available at https://www.lincolninst.edu/sites/default/files/pubfiles/unit-approach-to-taxation-of-railroad-public-utility_0.pdf (accessed Jan. 10, 2019) (describing unit valuation in those terms); James C. Bonbright, I The Valuation of Property: A Treatise on the Appraisal of Property for Different Legal Purposes 511-13 (1937) (unit valuation is designed to capture worth of a business as going concern, not its physical plants). And while the department may rely on a comparison of the company's tangible property in Oregon and elsewhere to allocate a portion of the overall assessed value to Oregon, it is not required to do so. ORS 308.550(1) (department may determine Oregon's proportion using number of miles of rail, wire, pipe or pole lines controlled by the company); ORS 308.550(2) (department "may use any other reasonable method to determine **293 the proper proportion of the entire [unit that is] assessable for taxation in this state").
In light of that understanding of unit valuation, we think the department is correct when it argues that the property it added to DISH's newly-created account in the 2009-10 central assessment roll was not the same, in whole or in part, as the tangible real and personal property that previously had appeared in DISH's property tax accounts in the various local assessment rolls. In fact, the unit of property (or proportion thereof) that was added to the central assessment roll had never previously been assessed in any manner. Accordingly, we agree with the department that the entire unit of property was "new property or new improvements" within the meaning of ORS 308.149(5), and was subject to the formula set out in ORS 308.153 for determining the MAV and AV of new property. The Tax Court erred in concluding otherwise.
The judgment of the Tax Court is reversed, and the case is remanded to the Tax Court for further proceedings.
Kistler, S. J., filed a dissent, in which Nakamoto, J., joined.

Measure 50 does define "improvements." According to paragraph 1 (Article XI, section (11)(a)(A) of the Oregon Constitution), " '[i]mprovements' includes new construction, reconstruction, major additions, remodeling, renovation and rehabilitation, including installation, but does not include minor construction or ongoing maintenance and repair."

The implementing statutes were enacted within two months of the measure's approval by the same legislature that drafted Measure 50 and referred it to the voters. The fact that the same legislature proposed the constitutional wording and enacted the implementing statutes creates an interesting interpretive dynamic. The wording adopted by the voters clearly controls any constitutional question, but there may be some basis for considering the later-enacted implementing statutes as context for understanding the constitutional text.

ORS 308.146 provides, in relevant part:
"(1) The maximum assessed value of property shall equal 103 percent of the property's assessed value from the prior year or 100 percent of the property's maximum assessed value from the prior year, whichever is greater.
"(2) Except as provided in subsections (3) and (4) of this section, the assessed value of property to which this section applies shall equal the lesser of:
"(a) The property's maximum assessed value; or
"(b) The property's real market value."

Thus, ORS 308.146(3) provides:
"Notwithstanding subsections (1) and (2) of this section, the maximum assessed value and assessed value of property shall be determined as provided in ORS 308.149 to 308.166 if:
"(a) The property is new property or new improvements to property;
"(b) The property is partitioned or subdivided;
"(c) The property is rezoned and used consistently with the rezoning;
"(d) The property is first taken into account as omitted property;
"(e) The property becomes disqualified from exemption, partial exemption or special assessment; or
"(f) A lot line adjustment is made with respect to the property ***."

ORS 308.515 provides, in relevant part:
"(1) The Department of Revenue shall make an annual assessment of any property that has a situs in this state and that *** is used or held for future use by any company in performing or maintaining any of the following businesses or services ***
"* * * * *
"(h) Communication"
"Communication" is defined for purposes of that statute as "includ[ing] telephone communication, telegraph communication and data transmission services by whatever means provided." ORS 308.505(2).

The department submitted evidence that it had applied the cost approach, direct income approach, cash flow income approach and stock and debt approach to value the company's property and then had reconciled the different approaches to reach a single value. It had then subtracted from the value certain nonassessable property, such as FCC licenses and vehicles.

Under ORS 308.153(1)(b), the ratio that assessors must apply to the RMV of a new property to determine an assessed value for the property is capped at 1.0. As it turns out, the ratio that would have applied to DISH's property exceeded 1.0, so 1.0 became the operative ratio. That meant that, for that initial year of central assessment, the assessed value of DISH's property was the same as its real market value.

An issue arose in the Tax Court as to whether DISH had exhausted its administrative remedies before filing a complaint for the 2009-10 tax year. The parties thereafter entered into a stipulation under which the department agreed not to contest that DISH had properly preserved and exhausted its administrative remedies with respect to its objections applicable to that tax year.

The taxpayer in Comcast was a cable television company that also was subjected to central assessment for the first time in 2009, after many years of being assessed locally. The switch to central assessment and unit valuation resulted in a threefold increase in the assessed value of the company's property.

Much of the Tax Court's opinion is devoted to establishing the validity of that one-year time frame. We do not describe that portion of the opinion, because it is not relevant to the question before us.

This court has had no occasion to consider the Tax Court's opinion in Comcast. While the department initially did appeal from a general judgment that incorporated the Tax Court's order and opinion in that case, it later reached a settlement with Comcast, and the appeal was dismissed in light of that settlement.

ORS 308.142(2) defines "property tax account" to mean "the administrative division of property for purposes of listing on the assessment roll under ORS 308.215 for the tax year for which maximum assessed value is being determined." The referenced statute, ORS 308.215, describes the contents and arrangement of "assessment rolls." A separate statute, ORS 308.560, describes the contents and arrangement of the central assessment roll.

ORS 308.142(2) defines "property tax account" for purposes of ORS 308.142(1), which in turn provides that,
"for purposes of determining whether the assessed value of property exceeds the property's maximum assessed value permitted under [Measure 50], 'property' means:
"(a) All property included within a single property tax account ; or
"(b) In the case of property that is centrally assessed ***, the total statewide value of all property assessed to a company or utility that is subject to [central assessment] ."
(Emphases added.)

In that regard, it is notable that the same "property tax account" phrasing also is used in connection with the "omitted property" exception. ORS 308.156(3) provides that, "for the first tax year for which property is added to a property tax account as omitted property," one formula for adding in the value of that property applies, while in tax years subsequent "to the first tax year for which property is added to the property tax account as omitted property," another formula applies. Again, if the term "property tax account" is read narrowly to exclude the businesses listed in the central assessment roll, then those businesses-and only those businesses-would forever escape taxation for omitted property of which the assessor later becomes aware.

The Tax Court suggests in Comcast that an assessor does not add property to a property tax account but merely "administratively cause[s] the property tax account to reflect" an addition that is made by the taxpayer. 22 OTR at 252. That suggestion is disingenuous: Taxpayers may acquire or use new property, but they do not in any sense add such property to their property tax accounts.

In Comcast , the Tax Court invoked another maxim of statutory construction, ejusdem generis , to argue that the items specifically listed in ORS 308.149 (5)(a)(C) provide insight into the meaning of the catchall term "real and personal property," proving that the subsection as a whole refers solely to property added to a property tax account through an action of the taxpayer. It reasoned that, because "machinery, fixtures, furnishing and equipment" can only be added to a tax account as a result of the taxpayer's physical acquisition of those items, the same must be true of the catchall phrase that follows: "real or personal property." 22 OTR at 253-54. But that argument is circular: It assumes what needs to be proven-that "addition *** to the property tax account" refers to the taxpayer's acquisition of the property in question. Apparently recognizing the Tax Court's faulty logic, DISH does not repeat the Tax Court's argument.

The tax code area system is explained in ORS 310.147 :
"(1) Each year, the county assessor shall establish a system of code areas, identified by code numbers, which shall represent all of the various combinations of taxing districts, or tax zones of taxing districts in which district taxes differ, as of July 1 of that year in which a piece of property was located in the county on January 1 of that year.
"(2) The assessor shall compute a tentative consolidated ad valorem property tax rate for each code area ***."
Thus, it is the assessor who locates property in a given tax code area and changes property from one tax code area to another in response to changes in the boundaries of the underlying tax districts-for example, by a tax district's annexation of additional property.

We find no merit in the department's proffer of the first few words of ORS 308.153(1) ("[i]f new property is added to the assessment roll") as context showing that the legislature intended that being "new" would depend on whether property was new to the assessment roll to which it had been added. In that context, the term "new property" is independent of the wording that follows.

In other words, it ignored the statutory definition of that term at ORS 308.149(5).

The parties discuss the "omitted property" exception purely as context for understanding the meaning of the "new property" exception, and do not specifically address whether the department could have used that exception in 2009 when it first added DISH's property to the central assessment rolls. The parties appear to agree, however, that that exception is not available to the department now : At this point, DISH's property has appeared on the central assessment roll in every year since 2009, and that property therefore has not been omitted from the roll in "any year or years not exceeding five years prior to the last certified roll." ORS 311.216(1).

ORS 311.207 has since been renumbered. It now appears at ORS 311.216.

Again, this statute has been renumbered and now appears at ORS 311.223.

Relatedly, ORS 311.215 (1995) provided that, if an assessor fails to correct the assessment and tax rolls as provided in the relevant statutes after receiving information that property has been omitted from taxation, the state may bring a mandamus proceeding against the assessor to compel the assessor to do so.

The general formulas for limiting assessed value and maximum assessed value at ORS 308.146(1) and (2) apply to "property," which is defined for purposes of those provisions as (a) "all property contained within a single property tax account" or (b) the statewide value of all property assessed to a company that is subject to central assessment. ORS 308.142(1). Without an exception for omitted property, an assessor could discover substantial omissions in prior years from a taxpayer's property tax account or business operations but would be unable to correct those omissions if the resulting value of the property "in the property tax account" or "assessed to the company" would represent more than the permitted three percent increase that ORS 308.146(1) and (2) permit.

ORS 311.232 provides in part:
"If any [assessor] fails to comply with ORS 311.216 to 311.232 on the discovery by the [assessor], or on credible information being furnished by another person, that property has been omitted from taxation, the state, on the relation of any state officer or of any taxpayer of the county in which the failure occurs, may proceed against the [assessor] in any court of competent jurisdiction by mandamus to compel the [assessor] to comply with ORS 311.216 to 311.232. *** If judgment is rendered that credible information has been discovered by or furnished to the [assessor], or that the [assessor] has reason to believe that property has been omitted from taxation, the [assessor] shall forthwith place the omitted property on the assessment and tax roll in accordance with ORS 311.216 to 311.232."

DISH also contends that the notice requirement of ORS 311.216 becomes pointless if the assessor can add omitted property to the current assessment roll as "new property" without giving notice. We are unpersuaded. Although nothing in the implementing statutes, including the definition of "new property" at ORS 308.149(5), specifically requires notice to the affected taxpayer of an assessor's intent to add property to the current assessment roll, the notice requirement in ORS 311.216 presumably would apply in that circumstance (it applies when the assessor receives credible information that property has been omitted from "the current assessment or tax rolls," in addition to prior rolls in the last five years). And, in fact, DISH did receive notice of the department's intention to add previously unassessed property to its account, albeit as "new property."

Thus, while the existence of ORS 308.162(1) does not alter the meaning of "new property" in any formal sense, it has a clear practical effect on what can qualify as "new property."

Although DISH brands the department's decision to add its property to the central assessment roll as "unilateral" and a "whim," there can be no question, after this court's decisions in DIRECTV , that the decision to centrally assess the property was lawful and even required under ORS 308.515 ("The Department of Revenue shall make an annual assessment of any property *** used *** by any company in performing or maintaining any of the following businesses.").

As we already have explained, excepted properties are subject to their own set of limitations on assessed values.

We already have explained that, when ORS 308.149(5)(a)(C) defines "new property" to include "the addition of *** taxable real or personal property to the property tax account ," it is referring not only to the administrative division used for listing property on county assessment rolls, but also to the correlating administrative division used on the central assessment rolls-the company to which various items of property are assessed. See 364 Or. at 270-71, 434 P.3d at 389-90. Thus, insofar as we have interpreted that provision as pertaining when an assessor adds any previously unassessed property to a property tax account, the assessor's addition of such previously unassessed property to an account on the central assessment roll would constitute the addition of "new property."