IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| MITCHEL D. MILLER and MARTHA E. MILLER, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 190273N |
| v. | ) ) | |
| DESCHUTES COUNTY ASSESSOR, | ) ) | |
| Defendant. | ) | **ORDER** |

Plaintiffs appealed an omitted property tax assessment (notice), adding value to property identified as Account 155079 (subject property) for the 2013-14 through 2018-19 tax years. The parties submitted the matter to the court on stipulated facts and exhibits along with written arguments. This matter is now ready for determination.

## I. STATEMENT OF FACTS

The subject property was "undamaged" and "livable" as of January 1, 2006. (Stip Facts at ¶1.) In July 2006, it caught fire and burned, "causing extensive damage to the improvements." (*Id.* at ¶3.) A permit was pulled on August 9, 2006, for "[d]emo – single family attached * * * partial interior/exterior." (*Id.* at ¶4.) Another permit was approved on November 8, 2006, for "Fire Damage Repair and Additions." (*Id.* at ¶5.) Repairs from the fire along with a 175-square foot addition to the subject property were complete as of April 2007. (*Id.* at ¶7.)

Before the fire, the subject property's 2006-07 real market value was $262,660 and its maximum assessed value was $137,530. (Def's Br, Ex B at 1.) For the 2007-08 tax year, its real market value was $309,740 and its maximum assessed value was $56,920. (*Id.* at 2.) The applicable market trends for 2007-08 were 35 percent on the land and 11 percent on the improvements. (*Id.*) Defendant's 2007-08 summary report includes the comment: "2006

addition 175 # repairing remainder of interior for fire damage currently wired % complete reflected in effective age." (*Id.*) From its records, Defendant calculated that the 2007-08 real market value without the reduction for fire damage would have been $320,340. (Def's Br at 2.) Defendant further calculated that the 2007-08 real market value was reduced by 7 percent, whereas the maximum assessed value was reduced by 59.8 percent. (*Id.*) The subject property's 2008-09 real market value was $346,180, including $48,600 of exception value for the "remodel/addition" completed as of January 1, 2008. (*Id.*, Ex B at 3.) The 2008-09 maximum assessed value was $80,980, including an increase of $22,360 for that exception value.[1] (*Id.*)

On April 11, 2019, Defendant sent Plaintiffs a letter stating its intent to add additional value for the 2013-14 through 2018-19 tax years. (Stip Facts at ¶9, Ex H.) On May 1, 2019, Defendant sent Plaintiffs notice that it had made the proposed corrections. (Stip Facts at ¶10, Ex I.) The notice explained:

> "The house was damaged by fire in 2006. When reducing the value in tax year 2007-2008 to reflect the fire damage an error occurred and the incorrect amount of maximum assessed value was applied to the account. The tax statement for years 2007-2008 to current correctly reflects the Real Market Value however it does not reflect the correct Taxable Assessed Value."

(Stip Ex I.) Plaintiffs timely appealed to this court. (Stip Facts at ¶12.)

## II. ANALYSIS

The issue presented is whether Defendant may increase the subject property's maximum assessed value for the 2013-14 through 2018-19 tax years under ORS 311.205.[2]

A. *Parties' Arguments*

Plaintiffs make three arguments in opposition to Defendant's clerical error assessment.

---

[1] That is the real market value multiplied by the changed property ratio of 46 percent for the 2008-09 tax year. (Def's Br at 2, Ex B at 3.)

[2] Unless otherwise noted, the court's references to the Oregon Revised Statutes (ORS) are to 2017.

First, Defendant's error was "easily discoverable" and should have been discovered when the property was refinanced or inspected. (Ptfs' Br at 1.) Second, the error was not "arithmetic" but rather a valuation error. (*Id.*) Third, Plaintiffs will experience "severe prejudice" and "undue financial burden" as a result of the back taxes. (*Id.*) Plaintiffs make an alternate argument that the 2013-14 tax year is beyond the reach of the five-year look back period. (*Id.* at 1-2.)

Defendant responds, first, that Plaintiffs' refinancing was "a private transaction and [it] would not have access to that information." (Def's Br at 1.) Second, the error in the subject property's 2007-08 maximum assessed value was an "arithmetic" one: the maximum assessed value was supposed to be reduced by the same percentage as the real market value, but it was reduced by 59.8 percent where the real market value was reduced only 7 percent. (*Id.* at 2-3, citing Oregon Administrative Rule (OAR) 150-308-0110.) With respect to Plaintiffs' alternate argument, Defendant responds that, at the time of its discovery of the error and notice to Plaintiffs, the "current tax year" was 2018-19 so the five-year look back reached the 2013-14 tax year. (Def's Resp at 1-2.)

Of Plaintiffs' arguments, the court focuses on those supported by statutory authority: whether the error at issue was a "clerical error" and the number of tax years corrected.

B.        *Correction of Clerical Errors Under ORS 311.205, Generally*

ORS 311.205(1)(a) authorizes the officer in charge of the roll to correct certain "errors or omissions in the roll" including "clerical errors." A "clerical error" includes one that (i) arises from an error in the assessor's tax records; (ii) "would have been corrected as a matter of course" had the assessor discovered it; and (iii) "[f]or which the information necessary to make the correction is contained in the records." ORS 311.205(1)(a)(A). "Clerical errors include, but are not limited to, arithmetic and copying errors and the omission or misstatement of a land,

improvement or other property value on the roll." ORS 311.205(1)(a)(B). By contrast, "[t]he officer may correct an error in valuation judgment at any time in any account when an appeal has been filed in the tax court alleging that the value on the roll is incorrect, if the correction results in a reduction of the tax owed on the account." ORS 311.205(1)(b)(A). "[A]n error in valuation judgment is one in which the assessor * * * would arrive at a different opinion of value." ORS 311.205(1)(b)(D). "The officer may correct the roll for any year or years not exceeding five years prior to the last certified roll." ORS 311.205(2)(a).

An administrative rule provides further guidance on what qualifies as a clerical error:

"Clerical errors are those procedural or recording errors which do not require the use of judgment or subjective decision making for their correction. A clerical error is an arithmetic or copying error or an omission on the roll or misstatement of property value that is apparent from assessor office records without speculation or conjecture, assumption or presumption, and that is correctable without the use of appraisal judgment or the necessity to view the property."

OAR 150-311-0140(1). "[A]ll the facts necessary to correct the error" must be "contained in the records and could be readily determined by an impartial person examining these records." OAR 150-311-0140(3). "Records include, but are not limited to, field notes, the assessment roll, tax cards, deeds, vouchers and appraisal cards and jackets, which are regularly maintained by the assessor's office and used to determine value." OAR 150-311-0140(3)(a). The examples given in the rule indicate that the following are clerical errors: 1) placing the value of a house on the wrong tax lot following a division of the lot; and 2) valuing an "agricultural" property as "residential" where the property was rezoned and all relevant information – including the value of the property under each zone – was in the "appraisal jacket." OAR 150-311-0140.

Another administrative rule describes errors in valuation judgment as ones that require the officer to "exercise judgment to determine the value, formulate an opinion as to value, or inquire into the state of mind of the appraiser." OAR 150-311-0150(1). Mistakes of this type

include: "(a) Thinking that a house has a basement when it does not; (b) Making a mathematical error when computing the square footage, the acreage, or some other factor; or (c) Errors made in calculating a real market value." *Id.* With respect to errors made in calculating real market value, the rule states:

> "in appraising bare land, the appraiser may simply multiply the number of acres by the per acre value for that class of land. The appraiser may also then make adjustments to that result for size, shape, configuration, or other factors which affect the value of bare land. If the appraiser makes a mistake in any of these computations or assumptions of fact, these are mistakes that have entered into the appraiser's determination of judgment and are not subject to correction."

*Id.* A square footage error is not simply a clerical error, but rather involves valuation judgment: "Although the assessor used unit values in arriving at a total assessment, the assessor may also have made some adjustments in the final figure for special features or qualities peculiar to the property. The figures may be wrong but the assessor's judgment of the parcel's value may be right." *Id.* at Example 1.[3] Examples 2 and 3 reiterate that errors in square footage are valuation errors due to the numerous factors affecting value. "If it is unclear whether an error or an omission on the roll is a clerical error or an error in valuation judgment, the error or omission on the roll shall be considered an error or omission in valuation judgment." OAR 150-311-0150(2).

Several cases from this court provide further clarity on what qualifies as a clerical error. In *California v. Comm'n*, 3 OTR 41 (1967), the court held that the assessor's error of applying the wrong ratio to true cash value in order to determine assessed value was a clerical error under ORS 311.205. The court explained that "the application of the proper ratio * * * and the

---

[3] This court has held that square footage errors are not clerical errors because they are not discoverable from the assessor's records. *See, e.g., Su v. Dept. of Rev.*, 15 OTR 305 (2001) (square footage error was not a clerical error because it was not discoverable from the assessor's records; rather, an inspection and measurement of the property was required); *Strub v. Lane County Assessor*, TC-MD 080176B, WL 5050622 (Or Tax M Div Nov 21, 2008) (assessor cannot know an error exists "[w]hen an appraiser simply fails to measure a property correctly").

application of the millage rate are mechanical arithmetical processes as far as the assessor and tax collector are concerned." *Id.* at 45.

In *Klukas v. Deschutes County Assessor*, TC-MD 011078C, WL 1978941 (Or Tax M Div Aug 23, 2002), the court held that the assessor's omission of raw land value from its maximum assessed value calculation in 1997-98 and carried forward through the 2002-03 was a clerical error correctible under ORS 311.205. The error occurred when a computer program substituted "zero" for the raw land value in the initial maximum assessed value calculation for the 1997-98 tax year. *Id.* at *1.[4] The assessor provided records from the 1995-96 tax year showing the land value for that year, as well as records from the 1997-98 tax year showing that the new maximum assessed value was calculated based only on the value of site developments. *Id.* at *3.

In *Miller v. Jackson County Assessor*, TC-MD 111063C, WL 5766577 (Or Tax M Div Nov 16, 2012), the court held that the assessor's erroneous grant of special assessment to a property that did not qualify under the statutory criteria was a clerical error correctible under ORS 311.205. The court found that the assessor's records contained "all the pertinent data" and the error "involve[d] the misapplication of the statute by the county assessor rather than an appraiser's state of mind, [so] it [was] not an error in valuation judgment." *Id.* at *3.

C.    *Whether Defendant's Erroneous 2007-08 Maximum Assessed Value was a Clerical Error*

To understand the error at issue here, a brief review of the statute and rule governing the reduction of maximum assessed value following destruction or damage will be helpful. ORS 308.146(5)(a) (2005) states in pertinent part that, "when a portion of property is destroyed or damaged due to fire or act of God, for the year in which the destruction or damage is reflected by

---

[4] Under Measure 50, the 1995-96 real market value was required to be reduced by 10 percent to yield the new maximum assessed value for the 1997-98 tax year. *Klukas*, 2002 WL 1978941 at *2.

a reduction in real market value, the maximum assessed value of the property shall be reduced to reflect the loss from fire or act of God." The related administrative rule, OAR 150-308.146(5)(a) (2007) confirms that maximum assessed value is reduced in the same proportion as real market value.[5] *See also Nau v. Clackamas County Assessor*, TC-MD 010664E, WL 21254437 at *4 (Or Tax M Div Mar 3, 2003) (explaining that "[t]he intent of the rule is to reduce the [maximum assessed value] of the property in proportion to the reduction in the [real market value] resulting from the loss").

The administrative rule makes clear that the subject property's 2007-08 maximum assessed value should have been reduced by the same percentage as its 2007-08 real market value following the fire. The records Defendant produced demonstrate that did not occur. The question is whether Defendant's error was clerical or required valuation judgment.

The nature of the error at issue here is mathematical — applying an incorrect percentage to the 2007-08 maximum assessed value — and, perhaps, involved an appraiser's misapplication or misunderstanding of the law. From the authority discussed above, a mathematical error may be either a clerical error or one requiring valuation judgment depending on the specific error. For instance, when an appraiser makes a mathematical error in determining real market value, it likely involves valuation judgment due to the many adjustments required to reach an opinion of real market value. By contrast, maximum assessed value is a purely mathematical calculation based on statutes and rules; it does not involve the expertise or opinion of the appraiser. In that respect, it is like applying the correct ratio or millage rate to determine taxable value, as in *California Bag*. Similarly, *Klukas* supports the assessor's authority to correct a maximum

___

[5] The rule gives the following calculation: "Unadjusted MAV x percentage of unaffected property = MAV adjusted to reflect the loss from fire or act of God."

assessed value error that occurred several years prior to the current tax year, so long as the error is evident from the assessor's records.

To the extent the error at issue involved an appraiser misapplying or misunderstanding the applicable administrative rule, it may appear that the error involved valuation judgment. However, this court held in *Miller* that an appraiser's misapplication of a special assessment statute did not involve the appraiser's "state of mind" or "valuation judgment." To the extent the error at issue resulted from an appraiser's misapplication of OAR 150-308.146(5)(a) (2007), it still qualifies as a "clerical error" correctible under ORS 311.205.

D.      *Whether the 2013-14 Tax Year May be Corrected*

Plaintiffs argue in the alternative that the 2013-14 tax year is beyond Defendant's authority to correct under the five-year look back in ORS 311.205. The statute states in pertinent part that "[t]he officer may correct the roll for any year or years not exceeding five years *prior to the last certified roll*." ORS 311.205(2)(a) (emphasis added). Here, Defendant sent notice of the correction to Plaintiffs in May 2019, a date that fell within the 2018-19 tax year. The "last certified roll" was the 2018-19 tax roll, so five years prior to that roll was the 2013-14 tax year.[6]

### III.  CONCLUSION

Upon careful consideration, the court concludes that Defendant permissibly corrected a clerical error in the subject property's maximum assessed value under ORS 311.205. The court further concludes that the five-year look back period under that statute extended to the 2013-14 tax year. Although the court is sympathetic to the surprise and financial burden of receiving this assessment, it finds no basis in the law to cancel or otherwise modify it. Now, therefore,

---

[6] For a more detailed explanation of this calculation, see *Comcast v. Dept. of Rev.*, 22 OTR 233, 247-249 (2016), *abrogated on other grounds Dish Network v. Dept. of Rev.*, 434 P3d 379 (2019) (presenting an example in which notice was sent in May 2009, so the current tax year is 2008-09 and the five-year look back extends to 2003).

IT IS ORDERED that Plaintiffs' appeal is denied.

Dated this ___ day of April 2020.

_____
ALLISON R. BOOMER
MAGISTRATE

***This is a <u>dispositive order</u> pursuant to Tax Court Rule – Magistrate Division 16 C(1). The court will issue a decision after waiting 14 days to determine whether there is a dispute about costs and disbursements.  Any claim of error in regard to this order should be raised in an appeal of the Magistrate's decision when all issues have been resolved.  See TCR-MD 19.***

***This document was signed by Magistrate Allison R. Boomer and entered on April 10, 2020.***