CHART DEVELOPMENT CORP.,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4359)

C. H. Olson, Treasurer, Chart Development Corp., filed the motion for Plaintiff (taxpayer).

Douglas M. Adair, Assistant Attorney General, Department of Justice, Salem, filed the motion for Defendant (the department).

Decision for Defendant rendered July 15, 2003.

**HENRY C. BREITHAUPT, Judge.**

## I. CASE HISTORY

This case is before the court on remand from the Oregon Supreme Court for further consideration in light of *Flavorland Foods v. Washington County Assessor*, 334 Or 562, 54 P3d 582 (2002). *Flavorland* established the rule that in applying the provisions of Ballot Measure 50 (1997) (Measure 50), relating to maximum assessed value (MAV) and real market value (RMV), the constitutional language "each unit of property" is to be interpreted as referring to all property in a property tax account.

## II. FACTS AND ARGUMENTS OF THE PARTIES

The facts stipulated by the parties are summarized in the earlier opinion of this court. *Chart Development Corp. v. Dept. of Rev.*, 15 OTR 213 (2000), *vac'd and rem'd,* 335 Or 113, 61 P3d 255 (2002). The following facts are relevant to this proceeding. In early 1996, Plaintiff (taxpayer) purchased land on which timber and one or more buildings existed. The land, structures, and timber were contained in one property tax account. After its purchase of the property and before July 1, 1997, taxpayer razed one or more structures on the property and removed a quantity of timber from the property. Subsequently, the Washington County Assessor adjusted the RMV of the property to reflect the removal of structures and timber but did not make a downward adjustment in the MAV shown for the property tax account.

Taxpayer maintains that the property tax regime created by Measure 50 requires a reduction in the MAV where improvements or timber on real property are removed by a voluntary act of a taxpayer. Taxpayer argues that its removal of structures and timber constituted a substantial loss of value after July 1, 1995, and that the definition of "casualty" includes its removal of the buildings and timber.

In support of those positions, taxpayer points to Article XI, section 11(11)(a)(B), of the Oregon Constitution. Based on that section of the Oregon Constitution, taxpayer concludes that a reduction to MAV in the 1997-98 tax account is required.

The assessor made an adjustment to the RMV of the property in the 1997-98 tax account to reflect the removal of structures and timber. However, the assessor refused to adjust the MAV for the tax account.

## III. ISSUE

How, if at all, are the removals of structures and timber to be reflected in the MAV for a property tax account?

## IV. ANALYSIS

Article XI, section 11(11)(a)(B), of the Oregon Constitution provides:

> "The Legislative Assembly shall enact laws to adjust the **real market value** of property to reflect a substantial casualty loss of value after the assessment date."

(Emphasis added.) In addressing the arguments raised by the parties, four legislative enactments provide background and context relevant to this constitutional injunction and will be discussed by the court: ORS 308.428 (1999); ORS 308.425 (1999); ORS 308.146(6) (1999); and Oregon Laws 1999, chapter 1003, section 3.[1]

### A. *308.428 (1999); ORS 308.425 (1999); and ORS 308.146(6)*

ORS 308.428(1999) provides for adjustment to RMV where destruction or damage due to fire or an act of God occurs **between** January 1 and July 1 of an assessment year—that is, after the assessment date but before the beginning of the tax year. Damage or destruction of property due to fire or act of God occurring **after** July 1 of a year may lead to relief under ORS 308.425 (1999). ORS 308.146(6) (1999) contains a rule parallel to ORS 308.428 (1999) except that the

---

[1] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to 1997.

statute omits the requirement that the destruction or damage be due to fire or act of God.[2] *Compare* ORS 308.146(6)(a) (1999) *with* ORS 308.428(1) (1999).[3]

Although those statutes are relevant to the constitutional injunction of Article XI, section 11(11)(a)(B), they are not applicable to this case because they do not apply to the period between July 1, 1995 and July 1, 1997—the interim period between the base year for Measure 50 calculations and the first tax year in which Measure 50 was legally in force.[4] The interim period was of substantial importance in the application of Measure 50 and is the time frame relevant to this case because the removal of structures and timber occurred between the Measure 50 base measurement date of July 1, 1995, and the first application of Measure 50 in the tax year beginning July 1, 1997.

B. *Oregon Laws 1999, chapter 1003, section 3 and the Interim Period*

For the interim period, the questions otherwise answered by ORS 308.428 (1999) and other matters, are addressed by Oregon Laws 1997, chapter 541, section 2, which, as amended by Oregon Laws 1999, chapter 1003, section 3, provides, in relevant part:

"(1) Notwithstanding ORS 308.146 and unless section 3, chapter 541, Oregon Laws 1997, applies, for the tax year beginning July 1, 1997, the maximum assessed value of property and the assessed value of property under ORS 308.146 shall be determined as provided in this section.

"(2) The property's maximum assessed value for the tax year beginning July 1, 1997, shall equal the property's

---

[2] Although it is not determinative for this case, it may be that there are "casualty" losses that are not due to "fire or act of God." That may explain why the "fire or act of God" qualification is not found in ORS 308.146(6)(a).

[3] *See also* ORS 308.146(5)(a) (1999), which provides, in relevant part:

"[W]hen a portion of property is destroyed or damaged due to fire or act of God, for the year in which the destruction or damage is reflected by a reduction in real market value, the maximum assessed value of the property shall be reduced to reflect the loss from fire or act of God."

[4] All references to the "interim period" refer to the period between July 1, 1995 and July 1, 1997.

real market value for the tax year beginning July 1, 1995, reduced by 10 percent.

"(3)  Notwithstanding subsection (2) of this section, **when a portion of property was destroyed or damaged due to fire or act of God occurring during the period beginning after July 1, 1995, and before July 1, 1997,** the property's **maximum assessed value** shall be reduced to reflect the loss from fire or act of God.

"(4)  The property's assessed value for the tax year beginning July 1, 1997, shall equal the lesser of the property's real market value as determined under ORS 308.232 or the property's maximum assessed value."

(Emphasis added.) Although the constitutional text of Article XI, section 11(11)(a)(B) provides only for adjustments to RMV in the case of casualty losses, subsection (3) above contemplates adjustments to MAV in cases where the casualty is also due to fire or an act of God. That subsection applies only to the interim period.

### C.  *Relief Available by Constitution or Statute*

In light of the constitution and statutory provisions discussed above, it appears taxpayer can obtain relief only if either:

(1)  the loss in question was a "casualty loss" and the constitutional mandate is read as requiring an adjustment to MAV; or

(2)  the loss in question was from "fire or act of God" within the meaning of the statutory provisions of Oregon Laws 1997, chapter 541, section 2, as amended by Oregon Laws 1999, chapter 1003, section 3.

### 1.  *Constitutional Mandate*

In analyzing the constitutional point in (1) above, the court will assume for purposes of analysis only that the constitution requires an adjustment to MAV even though it refers only to RMV. However, the adjustment must be made only where there is a "casualty" loss. In applying the text and context of that term, words of common usage are given their plain, natural, and ordinary meaning. *Flavorland*, 334 Or at 568 (citation omitted).

As used in the constitution, "casualty" is an adjective modifying the noun "loss," or the subject phrase "loss in value." Taxpayer agrees that "casualty" is used as a modifier in the constitutional text. However, taxpayer attempts to use the definition of "casualty" as a noun to argue that anything destroyed is a "casualty" and therefore the razed buildings (and harvested timber) qualify as casualty losses.

■   As a noun, "casualty" is defined as "a person or thing that has failed, been injured, lost, or destroyed **as a result of an uncontrollable circumstance** or of some action." *Webster's Third New Int'l Dictionary* 349 (unabridged ed 1993) (emphasis added). Also noteworthy, "casualty insurance" is defined as "insurance against loss from accident." *Id*. Those definitions fully support a conclusion that an element of accident or uncontrollable force is necessarily involved in a casualty loss. Purposeful and voluntary removal of property by a taxpayer is not a "casualty" and may not even be a "loss."[5]

■   The broader context in which the constitutional provision cited by taxpayer occurs confirms that conclusion. Article XI, section 11(10)(b) provides:

> "In calculating the addition to value for new property and improvements, the amount added shall be net of the value of retired property."

As used in that section, "retired property" is a clear reference to property voluntarily retired or removed from service or use by the owner. If a "casualty loss of value" described in Article XI, section 11(a)(B) included voluntary retirements and removals, there would have been no reason to include Article XI, section 11(10)(b) in Measure 50.[6] Taxpayer's proposed construction of the casualty loss provision must be rejected as it would render another provision meaningless.

### 2. Statutory Relief

■   Under the relevant statutory provision that could support a change to MAV due to loss, the loss must be from

---

[5] Taxpayer seems to argue that any reduction is a "loss." Again, that goes too far.

[6] Consistent with this analysis, ORS 308.153(2) (1999) and its interim period corollary, Oregon Laws 1997, chapter 541, section 12, provide that if MAV is adjusted due to fire or an act of God, the reduction is not treated as a retirement.

fire or act of God. Or Laws 1999, ch 1003, § 3. No fire was involved here. The ordinary meaning of the term "act of God" is:

> "an extraordinary interruption by a natural cause (as a severe flood or earthquake) of the usual course of events that experience, prescience, or care cannot reasonably foresee or prevent—compare inevitable accident."

*Webster's* at 22. That definition prompts consideration of the term "inevitable accident," which is defined as:

> "an accident that could not have been foreseen or prevented by the due care and diligence of any human being involved in it: an accident caused by forces beyond the power of any human being involved to foresee or overcome by the exercise of ordinary prudence."

*Id.* at 1157.[7] The intentional razing of a building or harvest of timber is not due to an act of God.

Taxpayer is not entitled to an adjustment in the 1997-98 MAV for the tax account by reason of any "casualty loss" or "act of God" having occurred.

## D.   *Property Removed or Retired from Service*

The constitutional provision on retirements may point the way to potential relief in the form of adjustment to MAV for taxpayer and others who remove or retire property from service or use.[8] The constitutional provision on retired property contained in Article XI, section 11(10)(b) finds statutory expression in ORS 308.153(2) (1999) and, for the interim period in Oregon Laws 1997, chapter 541, section 12. Those statutes contemplate that when new property or improvements are added to the tax account, the RMV of those items is reduced by the RMV of retirements from the account.

---

[7] In *Schweiger v. Solbeck*, 191 Or 454, 230 P2d 195 (1951), the Oregon Supreme Court held that the "act of God" defense was not established where cabins had been destroyed by logging debris following a heavy rain. The court defined "act of God" as an event of extraordinary and unprecedented proportions "* * * not foreshadowed by the usual course of nature, and whose magnitude of destructiveness could not have been anticipated or provided against by the exercise of ordinary foresight." *Id.* at 464 (citations omitted).

[8] Any relief in a particular case, including this one, may be subject to procedural and substantive limitations.

The administrative rule adopted by the department interpreting those provisions with respect to centrally assessed property indicate that a multiple-year approach is used in this regard. *See* OAR 150-308.149(5). Under that rule, it appears that retirements may be offset against improvements added to the tax account in the same year or subsequent years. *See id.* ("Typical fixed asset accounting procedures provide for annual removal of retired assets. Using successive years' account totals to determine maximum assessed value will result in a netting of retirements against true improvements.").[9]

Here, taxpayer removed and may have "retired" property from the tax account. Later, taxpayer may have added new property or improvements to the account. In such situations, the rules of ORS 308.153(2) (1999) and its corollary interim period statute may be the basis for a MAV adjustment in the year that improvements were or are added to the tax account.

## V. CONCLUSION

For the reasons stated above, taxpayer is not entitled to a reduction to MAV in the 1997-98 tax account under appeal. Now, therefore,

IT IS ORDERED that Plaintiff's Second Motion for Summary Judgment is denied, and

IT IS FURTHER ORDERED that Plaintiff is granted leave to raise, by motion, any issue relating to an adjustment to MAV under the principles of Oregon Laws 1997, chapter 541, section 12, or if applicable ORS 308.153(2) (1999), for the 1997-98 tax year, and

IT IS FURTHER ORDERED that Defendant's cross-motion for summary judgment is granted, subject to the leave granted to Plaintiff above. Costs to neither party.

---

[9] Although the rule promulgated by the department specifically addresses centrally assessed property, nothing in the Measure 50 constitutional scheme suggests that the basic principles of the rule would not be applicable to other property.