IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

CATHY J. SWANEK,               )
                                  )
        Plaintiff,           )   TC-MD 200095N
                                    )
        v.                    )
                                    )
LANE COUNTY ASSESSOR,     )
                                    )
        Defendant.      )   **DECISION**

       Plaintiff appealed the value of properties identified as Accounts 1205754 and 1446879 (subject property) for the 2019-20 tax year. A trial was held on October 29, 2020, in the courtroom of the Oregon Tax Court. Plaintiff appeared and testified on her own behalf. Faith Bowlsby (Bowlsby), Appraiser III, and Sarah Canale, Property Appraiser II, appeared on behalf of Defendant. Bowlsby testified on behalf of Defendant. Plaintiff's Exhibits 1 to 28 and Defendant's Exhibits A to E were received without objection.

## I. STATEMENT OF FACTS

       "The subject property is located in a rural area about 12 miles southwest of the Eugene [urban growth boundary]." (Def's Ltr, Oct 15, 2020.) Plaintiff "owns four tax lots at this location, however only two are under appeal * * *. The four parcels total 83.54 acres, with a total of 41.79 acres under appeal." (*Id.*) Plaintiff testified that one of the two subject parcels includes her residence and the other, a 37-acre parcel, includes an agricultural building and a "caretaker's residence." (*See* Def's Ex B at 1 (map).) Defendant classifies the "caretaker's residence" as a house and Plaintiff agreed. Defendant classifies the agricultural building as a garage. Plaintiff testified that it has electricity, a concrete floor, and garage doors.

       A Bureau of Land Management (BLM) road is located along the boundary of the subject

property. (*See* Def's Ex B at 1.) Bowlsby testified that the access road easement was a matter of public record when Plaintiff purchased the subject property in 2004 and is identified in the deed. (*See* Def's Ex A.) Plaintiff testified that the access road was originally just a logging road, but now it is open to hunters and others at least four months out of the year. She testified that the road brings "undesirable people" to the subject property, such as drug users. Cell phones do not work at the subject property and last time it snowed, Plaintiff went four days without contact.

Plaintiff's son was struck by a bullet at the subject property on July 29, 2019. (*See* Ptf's Ex 22 (police report).) She testified that the area where people frequently go shooting is about one mile from the subject property. (*See* Ptf's Ex 19, 21.) According to Plaintiff's map, the shooting area is marked "private/unknown," not BLM land. (*See* Ptf's Ex 19.) The road referenced in the police report about the shooting is not the road along the subject property. (*Compare* Ptf's Ex 19 and 22.) Plaintiff has reached out to elected representatives and the BLM to try to find a resolution. (Ptf's Ex 23.) She testified that the shooting should be considered an act of God; her family, including children and grandchildren, can no longer use the subject property, as they are traumatized by the shooting.

A.    *Comparable Sales*

Plaintiff identified as a comparable sale the neighboring house, which sold for $656,000 on July 31, 2020. (Ptf's Ex 2 at 1; *see also* Def's Ex B (parcel 902).) She testified that the house is larger than the subject property and the acreage is about the same; its finishes are upgraded and nice. The listing describes the house as 4,438 square feet with four bedrooms and four bathrooms, built in 1980. (*Id.* at 2.) Plaintiff testified that the comparable sale is protected by the subject property; "all bullets stop" at the subject property and there is a hill behind the house. Based on that sale, Plaintiff requested a real market value of under $650,000. Bowlsby testified

that Plaintiff's comparable sale is class 4+, so inferior to the subject property. (*See* Def's Ex E.) It has a few more amenities, but it is not a custom home like the subject property.

Bowlsby testified that the subject property's primary residence is a class 6 "custom home" so she selected comparable sales based on the class. (*See* Def's Ex C.) The caretaker's residence is class 5, "fairly well built," so she found comparable sales from class 4 to class 6-. (*See id.*) Bowlsby identified four comparable sales for each of the two subject accounts. (Def's Ex C.) The four comparable sales for Account 1205754 ranged from $252 to $318 per square foot for a sale price range of $750,000 to $1,085,000. (*Id.* at 2.) The three comparable sales for Account 1446879 ranged from $298 to $488 per square foot for a sale price range of $821,000 to $1,250,000. (*Id.* at 4.) Plaintiff testified that none of Defendant's comparable sales suffer from the same problems as the subject property, so they are not relevant.

B.    *Parties' Claims*

The 2019-20 tax roll real market of Account 1205754 was $1,001,755 and the Board of Property Tax Appeals (BOPTA) reduced it to $800,000. (Compl at 3.) Its maximum assessed value was $429,828. (*Id.*) The 2019-20 tax roll real market of Account 1446879 was $1,072,497 and BOPTA reduced it to $847,264. (*Id.* at 4.) Its maximum assessed value was $331,425. (*Id.*)

Plaintiff explained that this case is not "just a matter of real market value. The increasing negative effect of the BLM access road and how it limits our use and enjoyment of the property has changed since 1963. The gun shooting of my son from BLM land last year is a great threat mentally and physically to him and all of us, as is the continuing shooting from BLM land." (Ptf's Ltr at 1, Oct 19, 2020.) She requests a reduction in the subject property's maximum assessed value based on destruction or damage due to an act of God. (*See id.* at 2.) Plaintiff also

seeks a property tax exemption because the subject property is "so uniquely dangerous." (Compl at 2.) At trial, Plaintiff suggested that the subject property may qualify for a special assessment program, such as historic property, wildlife, conservation, or open space.

Defendant made compression calculations on each of the two subject accounts finding no tax savings at the following real market values: $500,878 for Account 1205754 and $536,249 for Account 1446879. (Def's Ex D.) Bowlsby explained that part of the subject property is already in forestland special assessment; she is not aware of any other programs for which it might qualify. Defendant moved to dismiss this case because Plaintiff is not aggrieved.

## II. ANALYSIS

The issues presented for the 2019-20 tax year are: 1) whether the subject property is exempt from taxation; 2) whether the subject property qualifies for special assessment; 3) whether the real market value should be reduced; and 4) whether the maximum assessed value should be reduced due to damage or destruction.

Plaintiff, as the party seeking affirmative relief, bears the burden of proving her case by a preponderance of the evidence. ORS 305.427.[1] Preponderance of the evidence means "the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (citations omitted). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality and other distinguishing differences, and testimony from licensed

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

professionals such as appraisers, real estate agents and licensed brokers." *Etzger v. Clatsop County Assessor*, TC-MD 120534D, 2012 WL 5350257 at *3 (Or Tax M Div Oct 30, 2012).

A.       *Exemption and Special Assessment Claims*

Plaintiff requests that the subject property be exempt from taxation because it is "uniquely dangerous," as demonstrated by the shooting that occurred in 2019. In general, all real and tangible personal property in Oregon is subject to assessment and taxation unless otherwise exempt. *See* ORS 307.030. Exemptions are provided for certain property of religious or charitable organizations, among others. *See, e.g.,* ORS 307.130, 307.140. The court is not aware of any statute exempting property based on an injury that occurred on the property or based on the continued risk of injury or death, and Plaintiff has identified none. Plaintiff's claim for exemption is denied.

Oregon provides various special assessment programs, such as for property exclusively used for farming. *See, e.g.,* ORS 308A.062. Indeed, Defendant reported that part of the subject property is in forestland special assessment. Plaintiff contends that the subject property qualifies for another special assessment program, such as for historic property, wildlife, conservation, or open space. Those special assessment programs each have detailed qualification requirements. *See* ORS 308A.300 to 308A.330 (open space); ORS 308A.400 to 308A.430 (wildlife habitat); ORS 308A.450 to 308A.456 (conservation easement); and ORS 358.475 to 358.545 (historic property). Furthermore, each program requires an application be made to the county assessor. ORS 308A.306 (open space); ORS 308A.424 (wildlife habitat); ORS 308A.456 (conservation easement); and ORS 358.487 (historic property). The court received no evidence that Plaintiff submitted an application to Defendant's office. Plaintiff has not complied with the requirements for special assessment and Defendant has taken no action for this court to review.

B.      *Real Market Value*

"Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor*, TC-MD 020869D, 2003 WL 21263620 at *2 (Or Tax M Div Mar 26, 2003).

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

ORS 308.205(1).  The assessment date for the 2019-20 tax year was January 1, 2019.  *See* ORS 308.007.  Real market value shall be determined by the methods and procedures adopted by the Oregon Department of Revenue.  ORS 308.205(2).  By rule, three approaches to value must be considered: (1) the cost approach; (2) the sales comparison or comparable sales approach; and (3) the income approach.  OAR 150-308-0240(2)(a).  Even though all three approaches must be considered, all three may not be applicable to the valuation of the subject property.  The applicable valuation approach is a question of fact that will be determined on the record.  *Pac. Power & Light Co. v. Dept. of Revenue*, 286 Or 529, 533, 596 P2d 912 (1979).

The parties each considered only the sales comparison approach.  Defendant determined a value range of $750,000 to $1,085,000 for the primary residence parcel and a value range of $821,000 to $1,250,000 for the caretaker's residence parcel.  Plaintiff concluded a value of less than $650,000 based on the neighboring house that sold for that amount.  Defendant provided compression analysis demonstrating that Plaintiff would not realize any tax savings even if the subject property's real market value were reduced to $500,878 (primary residence) or $536,249 (caretaker's residence).  Indeed, the maximum assessed values of those two parcels are $331,425 and $429,828, respectively.  Accordingly, Defendant moved to dismiss Plaintiff's appeal.

ORS 305.275(1)(a) requires a person appealing a property tax assessment to the tax court

to be "aggrieved by and affected by an act, omission, order or determination of * * * a county board of property tax appeals * * * [or a] county assessor." "In requiring that taxpayers be 'aggrieved' under ORS 305.275, the legislature intended that the taxpayer have an immediate claim of wrong. It did not intend that taxpayers could require the expenditure of public resources to litigate issues that might never arise." *Kaady v. Dept. of Rev.*, 15 OTR 124, 125 (2000). Generally, where a taxpayer's requested real market value has no immediate impact on the taxpayer's property tax obligation, the taxpayer is not aggrieved under ORS 305.275. Here, Plaintiff's requested real market value for each of the accounts appealed would have no impact on assessed value. Plaintiff's real market value claim is dismissed.

C.       *Damage or Destruction Due to Act of God*

Plaintiff seeks a reduction in the subject property's maximum assessed value, arguing that the shooting that occurred in 2019 was an act of God.

ORS 308.425 allows a property owner to apply to the tax collector for a proration of taxes imposed for the tax year if the property "is destroyed or damaged by fire or act of God[.]" ORS 308.146(5)(a) requires a reduction in maximum assessed value of property "when a portion of property is destroyed or damaged due to fire or act of God[.]" The reduction is made "for the year in which the destruction or damage is reflected by a reduction in real market value[.]" *Id.* The Oregon Department of Revenue has promulgated a rule defining "destroyed or damaged" to mean "that the real or personal property is physically degraded by a qualifying fire or Act of God event. Property whose value is affected only by its proximity to another property physically degraded by a qualifying fire or Act of God event is not considered destroyed or damaged for purposes of proration of tax." OAR 150-308-0510. As an example, the rule describes a landslide in a subdivision caused by an act of God:

> "Some properties in the subdivision are physically damaged or destroyed by the landslide. Other properties in the subdivision are not physically affected by the slide, but may have a degraded market value due to the market attaching a stigma to the subdivision. Only those properties in the subdivision, which were physically degraded by the slide, are 'damaged or destroyed' and eligible for a proration of tax under ORS 308.425."

*Id.* "Fire or act of God" has the same meaning for ORS 308.146. OAR 150-308-0110.

The Oregon Supreme Court has defined an "act of God" as "an event of extraordinary and unprecedented proportions '* * * not foreshadowed by the usual course of nature, and whose magnitude of destructiveness could not have been anticipated or provided against by the exercise of ordinary foresight.' " *Chart Development Corp. v. Dept. of Rev.*, 17 OTR 170, 176 n 7 (2003) (citing *Schweiger v. Solbeck*, 191 Or 454, 464, 230 P2d 195 (1951) (finding that the destruction of cabins by logging debris following a heavy rain did not qualify as an act of God).) Flooding following a storm may qualify as an act of God. *See, e.g., Schellin v. Dept. of Rev.*, 15 OTR 126 (2000) (taxpayer's home was damaged by flooding from a storm). However, extensive water damage from a burst pipe was not due to an act of God because a pipe part wears out after 10 years and, in that respect, was anticipated and could have been prevented. *Clark v. Multnomah County Assessor*, 17 OTR-MD 72, 76 (2002).

Turning to Plaintiff's claim, the subject property damage is not a physical degradation as contemplated by the rule; rather, it is a form of stigma damage which is expressly excluded from property tax proration or maximum assessed value relief due to fire or act of God.[2] Court cases considering what qualifies as an act of God have also involved physical damage to property and have tended to concern natural disasters. Even if the court were to find that the shooting qualifies as an act of God, the reduction in maximum assessed value must be made for the year

---

[2] Stigma that impacts real market value may be reflected by a reduction in real market value.

that real market value is reduced and in proportion to the real market value reduction. *See* ORS 308.146; OAR 150-308-0110. Here, Plaintiff has not presented any evidence from which the court can determine how the shooting may have impacted the subject property's real market value. Plaintiff's request for a maximum assessed value reduction is denied.

## III. CONCLUSION

Upon careful consideration, the court concludes that Plaintiff's requests for exemption, special assessment, or a reduction in maximum assessed must be denied. The court further concludes that Plaintiff's request for a reduction in real market value is dismissed because she is not aggrieved. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this _____ day of March 2021.

_____
ALLISON R. BOOMER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*Some appeal deadlines were extended in response to the Covid-19 emergency. Additional information is available at <u>https://www.courts.oregon.gov/courts/tax</u>*

*This document was signed by Presiding Magistrate Allison R. Boomer and entered on March 3, 2021.*