IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| MW 2000 WILSON, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 200234N |
| | ) | |
| v. | ) | |
| | ) | **ORDER DENYING PLAINTIFF'S** |
| MULTNOMAH COUNTY ASSESSOR, | ) | **MOTION FOR PARTIAL SUMMARY** |
| | ) | **JUDGMENT AND GRANTING** |
| Defendant. | ) | **DEFENDANT'S CROSS-MOTION** |

This matter came before the court on the parties' cross-motions for partial summary judgment.[1] Oral argument was held remotely on May 11, 2021. Alex C. Robinson, attorney, appeared on behalf of Plaintiff. Carlos A. Rasch, Senior Assistant County Attorney, appeared on behalf of Defendant.

## I. STATEMENT OF FACTS

Plaintiff appeals the value of property identified as Account R269721 (subject property) for the 2019-20 tax year, challenging both the real market value and maximum assessed value. (Comp at 1-2.) The subject property "is an industrial property located in Northwest Portland." (Def's MSJ at 2.) Plaintiff purchased the subject property in November 2015 and thereafter "began to renovate and convert the subject property improvements that were in disrepair." (*Id.*) Plaintiff described its purpose as rehabilitating and repositioning the subject property "as flex space with a mixture of office and warehouse space." (Ptf's MSJ at 2.)

Prior to the 2019-20 tax year, the Department of Revenue valued the subject property "as state appraised industrial property consistent with ORS 306.126." (Ptf's MSJ at 1.) That was

---

[1] Defendant captioned its motion as a Cross-Motion for Summary Judgment but clarified at the oral argument that it is a motion for partial summary judgment. The parties agree the motions are not dispositive.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S CROSS-MOTION  TC-MD 200234N          1

based upon the prior owner's manufacturing use of the subject property. (*Id.*) For the 2019-20 tax year, appraisal responsibility for the subject property changed from the Department of Revenue to Defendant. (*Id.* at 2.) Plaintiff alleges that this change in appraisal responsibility was due to a change in the subject property's use, from manufacturing to flex space.[2] (*Id.* at 2.) It further alleges that, as state-appraised industrial property, the subject property was assessed at 100 percent of its real market value. (*Id.* at 1-2.)

For the 2017-18 through 2019-20 tax years, the subject property's values were as follows:

| Tax Year | Real Market Value | Maximum Assessed Value | Exception Value |
|----------|-------------------|------------------------|-----------------|
| 2017-18 | $5,882,400 | $17,125,020 | |
| 2018-19 | $6,399,660 | $17,725,020 | |
| 2019-20 | $15,991,010 | $20,194,620 | $6,300,000 |

(Ptf's MSJ at 2-3; Compl at Ex B; Def's MSJ at 2.) Defendant alleges that, prior to the 2019-20 tax year, the subject property's real market value was "far below" its maximum assessed value "due to the condition of the improvements." (Def's MSJ at 2.) It added exception value for the 2019-20 tax year based on Plaintiff's "extensive remodeling and renovation." (*Id.*) Defendant calculated the 2019-20 exception value by multiplying the real market value of the new improvements ($6.3 million) by the Change Property Ratio (CPR) (.392) and adding the product to the existing maximum assessed value. (*Id.* at 2-3.)

## II. PARTIES' ARGUMENTS

Plaintiff argues that the subject property's 2019-20 maximum assessed value should be wholly recalculated based on the "complete renovation" and redevelopment of the subject property coupled with the change in appraisal responsibility. (*See* Ptfs' MSJ at 4-5.) Plaintiff requests that the CPR "be applied to the entirety of the Subject Property's real market value" to

_____

[2] Defendant agrees that appraisal responsibility changed for the 2019-20 tax year but offered no explanation for that change. (*See* Def's MSJ at 2.)

determine its 2019-20 maximum assessed value. (*Id.* at 5.) Through written briefing and oral argument, Plaintiff identified three possible bases for recalculating the subject property's 2019-20 maximum assessed value: 1) retirements that should be taken into account in calculating exception value[3]; 2) a change in the subject property's zoning where the property is used consistently with that change; and 3) a change in appraisal responsibility, which is akin a disqualification from special assessment. (*See* Ptf's MSJ at 4-6; Ptf's Resp at 3-4.) More generally, Plaintiff expressed concern about a "legacy MAV" that does not reflect the condition or current use of the subject property, arguing that a complete recalculation of the 2019-20 maximum assessed value is the only fair and accurate way to reflect significant changes.

Defendant responds that maximum assessed value may only be adjusted in accordance with one of the exception events enumerated in the state constitution or statutes. (Def's Resp at 4-6.) No such exception exists for a change in appraisal responsibility. (*See id.*) Neither the exception for rezoning nor disqualification from special assessment applies here. Defendant added exception value for new improvements and agrees that it must subtract the value of any retirements. (*See id.* at 5-6.) However, "with the exception of the freight elevator, the equipment listed by Plaintiff appears to be machinery and equipment" that was segregated into a separate account in 2012 with a corresponding reduction in the subject property's real market value and maximum assessed value that year. (*Id.*)

### III.  ANALYSIS

The issue is whether the 2019-20 maximum assessed value must be wholly recalculated

---

[3] Plaintiff wrote that it "has removed most of the infrastructure which existed to serve the prior heavy industrial use. Plaintiff removed an industrial chiller located on the roof, removed two of the existing electrical services, removed a freight elevator and converted a second freight elevator into a passenger elevator, removed a massive dust collection system associated with the prior heavy industrial use, and changed the overall design of the buildings to better suit the Subject Property's new use." (Ptf's MSJ at 4-5.) Plaintiff further alleges that the value of those items is reflected in the subject property's 2019-20 MAV. (*Id.*)

by multiplying the 2019-20 real market value by the CPR.  (*See* Ptf's MSJ at 5.)  The court grants a motion for summary judgment if all the documents on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law."  Tax Court Rule (TCR) 47 C.[4]  "No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party * * *."  *Id.*

A.      *Maximum Assessed Value and Exceptions*

Measure 50, passed in 1997, introduced the concept of maximum assessed value, which was originally calculated by taking a property's 1995-96 real market value and subtracting 10 percent.  Or Const, Art XI, § 11(1)(a).[5]  For each successive year, the maximum assessed value may increase by no more than three percent over the prior year.  ORS 308.146(1).[6]  The three percent limit on maximum assessed value increases is subject to numerous exceptions.  *See* ORS 308.146(3).  Relevant here are the exceptions for "new property or new improvements to property"; property that is "rezoned and used consistently with the rezoning"; and property that is disqualified from special assessment.  ORS 308.146(3)(a), (c), (e).

1.      *Exception for new property or new improvements*

"New property or new improvements" are "changes in the value of property as the result of * * * [n]ew construction, reconstruction, major additions, remodeling, renovation or rehabilitation of the property" as well as "[t]he addition of machinery, fixtures, furnishings,

---

[4] TCR 47 is made applicable by Tax Court Rule – Magistrate Division (TCR-MD) 13 B which provides that "[t]he court may apply TCR 47 to motions for summary judgment, to the extent relevant."

[5] Measure 50 amended Oregon's Constitution but was later adopted by the legislature and codified in the Oregon Revised Statutes (ORS).  For ease of reference, the court refers to the statutory provisions.

[6] The court's references to the ORS are to 2017.

equipment or other taxable real or personal property to the property tax account." ORS 308.149(6)(a).[7] "The value of new property or new improvements equals [its] real market value * * * reduced (but not below zero) by the real market value of retirements from the property tax account." ORS 308.153(2)(a);[8] *see also Magno v. Dept. of Revenue,* 19 OTR 51, 54 (2006) (the real market value of new improvements less retirements – the exception value – "is the amount by which the [real market value] of the new improvements exceeds the [real market value] of any retirements"). Once determined, exception value is added to the maximum assessed value after being multiplied by the CPR. ORS 308.153(1)(b).

The parties agree that some exception value exists for the 2019-20 tax year associated with Plaintiff's renovation of the subject property. Plaintiff alleges that certain items were removed during that process and were not taken into account as retirements. Defendant disagrees. That is a factual dispute that the court is unable to resolve on summary judgment. Even assuming the subject property's 2019-20 exception value is overstated due to retirements, the remedy would be a reduction in the 2019-20 exception value rather than a recalculation of the entire 2019-20 maximum assessed value. As discussed above, the exception value of new improvements is the real market value of those improvements less retirements.

2. *Exception for rezoning*

Property that is rezoned and used consistently with the rezoning qualifies as an exception to the three percent cap on maximum assessed value. ORS 308.146(3)(c). Such property's new maximum assessed value is the sum of the existing maximum assessed value allocable to the

---

[7] New property also includes "the siting, installation or rehabilitation of manufactured structures or floating homes;" though that is not relevant here. ORS 308.149(6)(a)(B).

[8] "Retired property is property that is 'voluntarily retired or removed from service or use by the owner.'" *Magno*, 19 OTR at 64 (citing *Chart Development Corp. v. Dept. of Rev.,* 17 OTR 170, 175 (2003)).

unaffected portion of the property plus the real market value of the rezoned property multiplied by the CPR. *See* ORS 308.156(2), (5).[9] Thus, even rezoned property may not result in an entire recalculation of maximum assessed value. Plaintiff argues that "the change in use [of the subject property] from heavy industrial manufacturing to warehouse and flex office space" supports the application of this exception. (Ptf's Resp at 2-3.) As of the oral argument date, Plaintiff was investigating whether any zone or overlay change had occurred. Defendant agreed that it would recalculate the subject property's maximum assessed value if there had been a zoning change. However, a change in property classification or use is insufficient to qualify for the rezoning exception. (Def's MSJ at 5, citing OAR 150-308-0100.[10]) Here, again, a factual question remains: whether the subject property was rezoned. The court has not received any evidence of rezoning and cannot, therefore, conclude that the exception applies.

3. *Exception for disqualification from special assessment*

Property that is disqualified from special assessment qualifies as an exception to the three percent cap on maximum assessed value. ORS 308.146(3)(e). The new maximum assessed value of such property is calculated in the same manner described above for rezoned property: the existing maximum assessed value allocable to the unaffected portion of the property is added to the real market value of the disqualified property multiplied by the CPR. *See* ORS 308.156(4)(a), (5). Plaintiff argues that "[s]tate appraisal responsibility of certain industrial property is itself a form of special assessment" thus qualifying the subject property for the exception in ORS 308.146(3)(e). (Ptf's Resp at 3-4.) Plaintiff notes that the subject property's

---

[9] OAR 150-308-0200(1)(f) provides additional detail on the meaning of "rezoned" and the calculation of maximum assessed value when property is rezoned.

[10] OAR 150-308-0100(1) states "The single act of changing the property classification, described in OAR [150-308-0310], to better reflect the highest and best use of the property, does not qualify as an exception to the 3 percent limitation on growth in the maximum assessed value (MAV), as described in ORS 308.146(1)."

maximum assessed value was irrelevant when it was state-appraised because it was valued at 100 percent of its real market value; thus, its maximum assessed value is unreliable. (*Id.* at 4.)

To determine whether a change in appraisal responsibility constitutes a disqualification from special assessment, the court begins with an overview of county-appraised vs. state-appraised industrial property.

a.       County-appraised vs. state-appraised property

"State-appraised industrial property" is a unit of property for which the real market value of the improvements exceeds $1 million in the preceding year.  ORS 306.126(1)(b)(A). "County-appraised industrial property" is a unit of property for which the real market value of the improvements was $1 million or less in the preceding year and for which appraisal responsibility has been delegated to the county.  ORS 306.126(1)(a).  Upon request of the county assessor, the Department of Revenue may delegate appraisal responsibility for state-appraised industrial property to the county.  ORS 306.126(3)(a).  No appeal may be taken from that delegation and, once delegated, appraisal responsibility will remain with the county for five consecutive assessment years.  ORS 306.126(3)(d), (4)(a).  The statute describing appraisal responsibility as between the state and county makes no reference to special assessment.

b.       Special assessment programs

Oregon provides various special assessment programs, such as for farm use property (ORS 308A.053 to 308A.128); forestland (ORS 321.257 to 321.390; 321.805 to 321.855); open space (ORS 308A.300 to 308A.330); wildlife habitat (ORS 308A.400 to 308A.430); conservation easements (ORS 308A.450 to 308A.465); and historic property (ORS 358.480 to 358.545).  The statutes implementing those programs use the term "special assessment" and include detailed descriptions of how property qualifies for special assessment as well as how it

becomes disqualified from special assessment. *See, e.g.,* ORS 308A.062, 308A.068 (farm use special assessment qualification); ORS 308A.113, 308A.116 (farm use special assessment disqualification). Many of those special assessment programs existed at the time Measure 50 passed, suggesting that the voters would have been aware of them when approving the maximum assessed value exception for disqualification from special assessment. *See, e.g.,* ORS 308.397 (1995) (farm use); ORS 308.750 (1995) (open space); ORS 321.358 (1995) (forestland); and ORS 358.487 (1995) (historic property).

c.     State-appraised property is not specially assessed property

Unlike the special assessment programs described above, nothing in the text describing state vs. county-appraised industrial property references "special assessment." There is no application requirement or process for disqualifying property from state-appraisal responsibility. Indeed, no appeal may be taken from the Department of Revenue's delegation of appraisal responsibility to the county. The court finds nothing in the text or context of the constitutional or statutory provisions at issue to suggest that the voters or the legislature intended to include the designation of "state-appraised industrial property"[11] as a type of special assessment.

Plaintiff argues that — like disqualification from special assessment — changing from state appraisal to county appraisal involves changes in valuation methodology. The court considered and rejected that argument in *Dish Network Corp. v. Dept. of Rev.*, 364 Or 254, 434 P3d 379 (2019), concerning the application of the new property or new improvements exception to the addition of taxpayer's property to the central assessment roll where it had previously been

---

[11] Or its predecessor "principal industrial property." *See* ORS 306.126 (2014) (using the terms "principal industrial property" and "secondary industrial property" instead of state-appraised and county-appraised); *see also Seneca Sustainable Energy, LLC v. Dept. of Rev.*, 363 Or 782, 785 n4, 429 P3d 360 (2018) (noting that the 2015 amendments to ORS 306.126 "change[d] the definition of [taxpayer's] property from 'principal industrial property' to 'state-appraised industrial property'").

locally assessed. In *Dish*, the Department of Revenue argued that the new "unit valuation" method made the entire account new property and analogized to the exception for disqualification from special assessment. *Id.* at 289. Taxpayer disagreed, arguing that the real and tangible property was not new because it was previously assessed; only the intangible property was new to assessment. *Id.* The court ultimately agreed with the Department of Revenue that the unit of property involved in central assessment is entirely new property, notwithstanding the fact that some of the tangible property had previously been assessed locally; it is the value of "the company as a going concern." *Id.* 292-93. However, the court rejected the department's comparison to the exception for property disqualified from special assessment:

> "We are not persuaded that the nearby exception for property disqualified from special assessment is indicative of a broad legislative concern about the effect of *any* changes in the legal standard under which property is to be assessed, or that the 'new property' exception can reasonably be viewed as embracing such a concern."

*Id.* at 290 (emphasis in original).

Here, where appraisal responsibility for the subject property has changed from the state to the county, different valuation techniques and methodologies may be employed to determine real market value. However, unlike with the change from local to central assessment, the unit of property to be valued has not changed. Absent additional facts,[12] the change from state to county appraisal responsibility does not support a recalculation of maximum assessed value.

B.      *Other Statutory Bases for Reducing Maximum Assessed Value*

Since the passage of Measure 50, the legislature has created additional bases for adjusting maximum assessed value. In 1999, it added statutory provisions allowing for a reduction in maximum assessed value when property is destroyed or damaged due to fire or act of God. *See*

---

[12] For example, if the subject property were also rezoned and used in accordance with the new zoning.

1999 Or Laws ch 1003; HB 2043. In 2007, it added statutory provisions allowing for a reduction in maximum assessed value when a building is demolished or removed from the property. *See* 2007 Or Laws ch 516; SB 697 (2007). In the absence of a clear constitutional or statutory basis, courts have declined to adjust maximum assessed value. *See, e.g., Chart Development Corp. v. Dept. of Rev.*, 17 OTR 170, 171, 172-176 (2003) (finding no basis to adjust taxpayer's maximum assessed value after taxpayer "taxpayer razed one or more structures on the property and removed a quantity of timber from the property"; "voluntary retirements and removals" did not qualify as a casualty loss or a loss due to fire or act of God).[13] This is consistent with the rule that courts cannot "insert what has been omitted" into statute. *See* ORS 174.010.

## IV. CONCLUSION

Plaintiff has failed to prove as a matter of law that the subject property's 2019-20 maximum assessed value should be entirely recalculated. Plaintiff has raised some issues of fact that are not appropriate for summary judgment: namely, whether there were retirements from the account that should be reflected in the exception value for new property or new improvements; and whether the subject property was rezoned and used consistently with that rezoning. However, the mere fact that the subject property changed from state appraisal responsibility to county appraisal responsibility does not qualify for any exception to maximum assessed value, including that for disqualification from special assessment. Now, therefore,

IT IS ORDERED that Plaintiff's motion for partial summary judgment is denied and Defendant's motion for partial summary judgment is granted.

IT IS FURTHER ORDERED that the parties shall confer and file a joint written status

---

[13] *Chart* was decided before the legislature added provisions in 2007 allowing a reduction in maximum assessed value when a building is demolished or removed from property.

report within 30 days from the date of this Order proposing next steps.  If trial is requested, the parties shall propose three mutually convenient trial dates.

Dated this _____ day of September 2021.

_____
ALLISON R. BOOMER
PRESIDING MAGISTRATE

*This interim order may not be appealed.  Any claim of error in regard to this order should be raised in an appeal of the Magistrate's final written decision when all issues have been resolved.  ORS 305.501.*

*This document was signed by Presiding Magistrate Allison R. Boomer and entered on September 23, 2021.*